CASE 38—INDICTMENT—MAY 1.

# Lockard v. Commonwealth.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. AN INDICTMENT FOR UTTERING A FORGED WRITING must state the acts constituting the *uttering* and not the *forging* of the writing. It is not necessary, therefore, to state who committed the forgery or how it was done. And while the falsity of the paper is a fact necessary to the existence of the offense, the statement that the defendant knew it to be false embraces the charge that it was so in fact.

2. IMPEACHMENT OF DEFENDANT'S CHARACTER.—If the defendant in a criminal case avails himself of the privilege given him by statute of testifying in his own behalf he is to be regarded and treated as any other witness. Therefore, his general moral character, and not merely his character for truth and veracity, may be put in issue by the Commonwealth.

R. W. SLACK AND OWEN & ELLIS FOR APPELLANT.

1. An indictment for uttering a forged instrument is bad for failure to allege the place of uttering. (Stowes v. Commonwealth, 12 Bush, 342; Commonwealth v. Williams, 13 Bush, 267.)

2. When the accused testifies in his own behalf the Commonwealth should not be allowed to prove his general bad character. (McDonald v. Commonwealth, Ky. Law Rep., vol. 9, p. 230.)

P. W. HARDIN, ATTORNEY-GENERAL, FOR APPELLEE.

No brief in record.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

An indictment for uttering a forged writing must state the acts constituting the uttering, and not the forging of it. It is immaterial who committed the forgery, or how it was done. The falsity of the paper is merely a fact necessary to the existence of the offense. If it be forged, and one so knowing utters it as genuine, he is guilty. The acts constituting the uttering are the *gravamen* of the offense.

In this case the indictment charges, in substance, that the appellant had the writing; knew it to be false; presented it to the party defrauded, representing it as genuine, and thereby obtained property of value. The statement that the appellant knew it to be false embraces the charge that it was so in fact.

It is charged in the forepart of the indictment when and where the paper was forged. This was unnecessary; but in this instance it aids as to the sufficiency of the charge of uttering the paper, because, in thereafter stating it, the words "then and there" are used, thus fixing the venue of the offense. The indictment is sufficient. We now reach the next question in the case, and one which has not been heretofore considered by this court.

The act of May 1, 1886, provides: "In all criminal and penal prosecutions now pending, or hereafter instituted in any of the courts of this Commonwealth, the defendant on trial, on his own request, shall be allowed to testify in his own behalf, but his failure to do so shall not be commented upon, or be allowed to create any presumption against him or her." (General Statutes, page 548.)

The appellant testified for himself, but offered no evidence as to his character. The Commonwealth then introduced several witnesses, who were, over the appellant's objection, permitted to testify that while they knew nothing of his character for truthfulness, yet his general moral character was bad.

The law invests every person charged with crime with a presumption of good character. If the accused chooses to rest upon it, and not put his general char-

acter in issue by offering evidence as to it, then the State can offer none to impeach it. It is only when the defendant casts aside this shield of presumption, and attempts to show his general good character by affirmative evidence, that the door is opened for evidence of his bad character upon the part of the prosecution. This has long been a familiar rule. He may now, however, be both a defendant and a witness.

The weight of common law authority is, that an inquiry into the general character of a witness must be confined to truth; and where this rule obtains there is no difficulty in holding that evidence as to the general moral character of a defendant is inadmissible, unless he has first offered testimony as to it, although he may have testified for himself. The inquiry must be confined to his general character for truth and veracity. Thus, in the case of Fletcher v. The State, 49 Ind., 124, it was held, that as the accused had not put his general character in issue, evidence of his general bad moral character was inadmissible to assail him as a witness. In that State a witness, whether he be a defendant or not, can not be thus attacked in a criminal cause. This is not so, however, in this State. Here, evidence of the general moral character of a witness is admissible upon the ground, as was said in the case of Tacket v. May, 3 Dana, 80, that "a witness whose moral character is bad, is not as credible as one whose moral character is good." This is the settled rule with us. It is no longer open to first impression. The real question, therefore, now presented is, whether, while the testimony of witnesses generally may be assailed by reason of their general moral char-

acter, that of defendants in criminal cases shall only be open to attack upon the score of truth or veracity?

If this restriction of the general rule existing with us is to be applied, it must be because otherwise the general moral character of a defendant would, without his consent, by his becoming a witness, be in effect thrown into the scale, and he might sometimes be convicted more upon his bad character than upon the facts of the transaction under investigation. It is, therefore, now urged, and the argument is not without weight, that an impeachment of his testimony upon the score of character should be confined to his general reputation for truth and veracity. If so, this qualification of the general rule must be attributed to the existence of that other rule, which, in a criminal case, gives to the defendant alone the right to put his general character in issue. The law making him a competent witness is silent upon this point. Its language merely places him upon the plane of any other witness, if he chooses to testify.

Undoubtedly the rule that the defendant only can put his general character in issue is founded in sound policy. If the State could do so *ad libitum*, convictions would be likely to result often from bad character rather than from guilt of the offense charged. When, however, the defendant becomes a witness, he voluntarily assumes another character.

Public policy and individual safety forbid that his reputation for veracity should then be beyond inquiry. Probably no case to the contrary can be found. A different rule would serve but as a shield for crime. Why, also, if the testimony of other witnesses may

be impaired or destroyed by evidence of general bad moral character, should not his be open to like attack? If there be good reason for it in the one case, does it not exist at least equally in the other? If it be said that in his case it may affect him as a defendant, and not merely as a witness; that it, instead of the evidence as to the act in question, may produce a conviction, why may it not also be said that testimony showing he is unworthy of belief is likely to have the same effect? If by his becoming a witness the State is enabled in effect to avoid the rule that one criminally charged can alone put his general moral character in issue, yet he voluntarily affords the opportunity. If he chooses to exercise the privilege, should it not be with any burden that is necessary to the safety of the public? Its rights, as well as his, must be regarded. Reason dictates that he, as a witness, should not be afforded an advantage not enjoyed by other witnesses. If it is important to the administration of justice that their general character for morality should be open to inquiry, why is this not also true of the defendant when he voluntarily becomes a witness? If the testimony of others, who are disinterested, may be thus discredited, ought that of the party interested, however bad may be his character, to be beyond inquiry? Surely a shield should not be furnished to him that is denied to the disinterested and the impartial. It would be strange indeed if the character of a disinterested witness could be attacked by the adverse party, and shown to be infamous, while that of the party interested, and who voluntarily becomes a witness, could not be questioned. If so, then the legal presumption

that a witness is of good character could be overthrown as to one altogether disinterested, but must remain indisputable when the party himself becomes the witness. .The mere statement of such a position furnishes its own refutation.

These considerations must prevail over the suggestion that if the general moral character of the accused when he becomes a witness can be assailed, it is in effect a violation of the rule that in a criminal case the defendant alone can put it in issue. His credit, like that of any other witness, is for the jury. The end desired is to arrive at the truth or falsity of the statement. If the general moral character of the one renders him unworthy of credit, it should operate likewise as to the other. The statute permitting the accused to testify does not exempt him from cross-examination or impeachment. If he avails himself of the privilege, he subjects himself to the tests applicable to other witnesses. (Commonwealth v. Bonner, 97 Mass., 587.) It would not only be dangerous, but difficult to make an exception in his favor. Both reason and authority so dictate.

Statutes essentially like ours have been adopted in Nevada, New York, California, New Hampshire, Missouri and other States.

In the case of The State v. Cohn, 9 Nevada, 179, it was held that one accused of crime offering himself as a witness in his own behalf is to be regarded and treated as any other witness.

In Brandon v. The People, 42 N. Y., 265, it was said that when he elected to become a witness he left his position as defendant, and subjected himself to the same rules and tests as any other witness.

The later case of The People v. Connors, 50 N. Y., 240, decides that by availing himself of the privilege of testifying he assumes all the burdens incident to the position ; and in McGarry v. The People, 2 Lansing, 227, it was said : "He could not have been compelled to give evidence at all ; but when he made himself a witness, under the privilege conferred upon him by this statute, he waived the constitutional protection in his favor, and subjected himself to the peril of being examined as to any and every matter pertinent to the issue."

The cases of The People v. McGungill, 41 Cal., 429, and Town of Norfolk v. Gaylord, 28 Conn., 309, are to the same effect.

In the State v. Ober, 52 N. H., 459, this language was used : "If he consents to become a witness in the case voluntarily, and without any compulsion, it would seem to follow that he occupies, for the time being, the position of a witness, with all its rights and privileges, and subject to all its duties and obligations."

The case of The State v. Clinton, 67 Missouri, 380, however, seems to have been one in all respects similar to that now before us. In that State, as in this, the general moral character merely of a witness may be shown without inquiring as to his general reputation for truth. The defendant voluntarily testified for himself. The State was permitted to inquire of other witnesses not only as to his general character for veracity, but as to morality ; and the Supreme Court of that State, in passing upon the question, said : "In the light, both of authority and reason, our opinion is that a defendant, who at his own option becomes a wit-

ness under the act of 1877, occupies the position of any other witness; is liable to be cross-examined as to any matter pertinent to the issue; may be contradicted and impeached as any other witness, and is to be subjected to the same tests."

We concur in this view. In our opinion it is the safe one. It is not unfair to the defendant. It subjects him to no test, when he voluntarily assumes the character of a witness, that may not be applied to witnesses in general.

The judgment is affirmed.