CASE 32—INDICTMENT—OCTOBER 17.

# Pace v. Commonwealth.

APPEAL FROM HARLAN CIRCUIT COURT.

1. CONTINUANCE—ADMISSION OF TRUTH OF AFFIDAVIT.—Section 189 of the Criminal Code, which denies to the defendant in a criminal case the right to a continuance on account of the absence of a witness, if the attorney for the State will admit, upon the trial, the truth of the statements which the defendant states in his affidavit that the absent witness would make, is not unconstitutional.

   Whether the amendment to that section which provides for the reading of the affidavit merely as the deposition of the absent witness is constitutional is not determined.

2. IMPEACHMENT OF CHARACTER OF ACCUSED.—When the accused testifies for himself he is subject to impeachment, as any other witness.

3. DYING DECLARATIONS.—Statements of the deceased made when he knew he could not live, and had given up all hope of recovery, were competent as his dying declaration, in so far as they related to the circumstances attending the injury. And while so much of the statement as declared "he was shot for nothing" was incompetent, it merely stated what was otherwise satisfactorily proved, and was, therefore, not prejudicial.

4. KILLING IN DEFENSE OF ANOTHER.—One has no right to kill in defense of another who is in fault.

N. B. HAYS FOR APPELLANT.

1. The court erred in refusing a continuance. Section 189 of the Criminal Code is unconstitutional in so far as it provides that the accused may be forced into trial in the absence of material witnesses. (Constitution of Ky., art. 13, sec. 12; Taylor v. Commonwealth, 9 Ky. Law Rep., 817; Commonwealth v. Jones, 10 Bush, 827.)

2. The court erred in admitting the statement of the deceased as his dying declaration, because he was not *in extremis* at the time it was made, and it was not restricted to the act of killing and the circumstances immediately attending it. (Terrell v. Commonwealth, 13 Bush, 259; Hollins v. Commonwealth, 12 Bush, 272; Leiber v. Commonwealth, 9 Bush, 11.)

3. It was error to admit evidence as to the general good character of the deceased when his character had not been attacked by the defense; and it was also error to allow the Commonwealth to prove the general bad character of the defendant, and thus impeach his affidavit, which had already been admitted to be true.

Pace v. Commonwealth.

JAMES D. BLACK of counsel on same side.

1. The court erred in *assuming* in its instructions to the jury that the acts of appellant were wrongful, and also in assuming that the acts of Day were .wrongful, and in making appellant responsible for the acts of Day.

2. The court should have required the jury to believe (if they believed it at all) *from the evidence beyond a reasonable doubt* that appellant or Day acted wrongfully.

P. W. HARDIN, Attorney-General, for appellee.

1. It is not error to refuse a continuance where the absent witness is not within the jurisdiction of the court, and there is no reason to believe that his presence can be secured at the next term of court.

2. The court having admitted the truth of the facts to which the absent witness would have testified if he had been present, the accused was not prejudiced by the refusal to continue.

3. The statement of the deceased was made when he was *in extremis*, and it related to the circumstances of the killing, and was, therefore, competent; and even if any part of it was incompetent, there was no objection except to the statement as a whole, and as a part of it was undoubtedly competent, the objection was properly overruled,

JUDGE HOLT delivered the opinion of the court.

While attending an election at the precinct where he voted in November, 1888, Calvin Pace was shot and killed by his cousin, the appellant, Francis Pace. The deceased was engaged in a quarrel with one Day, which appears to have been provoked by the latter. Just as it ended, the appellant appeared in the road, coming toward the parties with his gun. When he got within about five steps of the deceased, and without a word being said by either of them, he shot him. He died the next day. It is satisfactorily proven that the deceased was, at the time, standing quietly with a small pocket knife in his hand, whittling, probably, and making no demonstration toward the appellant or any one. Indeed, it is probable he did not see the appellant when he shot him, and had

no warning of his danger.   It is true the accused
testified that the deceased advanced toward him two
or three steps with the knife in his hand, and that
he then shot him.   He is supported in this statement
by two other witnesses, one of whom says he was
drunk at the time, and all three are not only contra-
dicted in their statements by numerous witnesses, but
impeached as to character.

The wound upon the deceased was not upon the
front of his body, but in the side, and his dying
statement was that he had not said or done any
thing to the appellant, and did not see him when he
shot him.   It is evident the killing was needless and
without excuse.   The appellant asks a reversal of his
conviction for murder upon several grounds.

Several witnesses stated that the deceased was a
peaceable man.   There was no objection or exception
to this testimony, however, and the appellant can not,
therefore, now complain upon this score.   He was in-
dicted, and also tried, at the March, 1889, term of
court.

He asked a continuance upon his affidavit because
of the absence of several witnesses.   The presence of
all of them was obtained, however, save William Hall,
by whom the accused claimed he would prove certain
threats by the deceased against his life.   The affidavit
disclosed that the proposed witness had been arrested
and taken away by the United States authorities upon
some charge, and no circumstances were stated show-
ing a likelihood of obtaining his presence as a witness
at the next or any future term of the court.   But
aside from this, the statements of the affidavit as to

what he would prove were admitted by the attorney for the Commonwealth to be true, and the application for the continuance having been refused, they were so read to the jury upon the trial.

Section 189 of the Criminal Code provides : "The provisions of the Code of Practice in civil actions in regard to postponement of the trial of actions shall apply to the postponement of prosecutions on application of the defendant, except that when the ground of application for a continuance is the absence of a material witness, and the defendant makes affidavit as to the facts which such witness would prove, the continuance shall be granted, unless the attorney for the Commonwealth admit upon the trial that the facts are true." ·

In 1886 our Legislature passed an act providing, in substance, that after the indictment term, the attorney for the Commonwealth, in order to prevent a continuance on account of an absent witness, should not be compelled, unless the court thought it proper, to admit the truth of what the affidavit of the accused might state he would prove by him, but only that he would so testify, if present, and that the accused could, upon the trial, read the affidavit as the deposition of the absent witness, subject to exception for incompetency, or contradiction by other evidence, or impeachment of the witness. (Crim. Code, sec. 189.)

It is urged that this enactment is in violation of the constitutional provision which guarantees to the accused "compulsory process for obtaining witnesses in his favor," and is, therefore, void. No such question, however, arises. The statements of the affidavit were read to the jury as admitted facts.

This practice has been criticised, and has grown up within comparatively late years. The common law practice required a witness in a criminal case to testify in open court. We recognize the fact that the production of the witness in court is more likely to lead to the fair administration of justice. The truth or falsity of his statement is then the more likely to be ascertained; and while the speedy administration of the law is highly important to both the accused and the public, yet the great end of a court is to administer justice. This is undoubtedly more apt to be attained by the personal presence of the witness, and this has been the general policy of the law from the date of *Magna Charta* to the present. It subserves public policy and guards individual right. If the manner of a witness adds weight to his testimony, the defendant should have the benefit of it; and if it detracts, the same is true of the State.

While the wisdom of the practice has been doubted, and it has often been said that it is not to be encouraged, yet the decided current of authority is that it is not error to refuse a continuance to a defendant in a criminal cause where the State admits that the statements in his affidavit of what he will prove by the absent witness are *facts*. It is true that this was denied in the case of Goodman v. The State, Meigs' Reports, 195, but it has been affirmed in Browning v. The State, 33 Miss., 47; Van Meter, &c., v. The People, 60 Ill., 168; The People v. Vermilzea, 7 Cowen, 369; Wassels v. The State, 26 Ind., 30; The People v. Diaz, 6 Cal., 248, and other cases.

In such a case the truth of the statements go to the

Pace v. Commonwealth.

jury as admitted. It is their positive duty to so consider them. They are not open to controversy, and it can not be said that the accused is deprived of his witness. This being so, he cannot be heard to say that he has been prejudiced. It is upon this ground that the decided weight of authority rests. In our opinion it should be followed, and the more especially since the section of our Code above cited should not be declared unconstitutional unless it be so beyond question.

It does not appear that the Commonwealth was permitted, upon the trial, to impeach, either directly or indirectly, the truth of the statements in the affidavit as to what the absent witness would, if he had been present, have proven. It is true a witness of that name was impeached, but the record shows that another person of the same name testified in the case, and we must presume the impeachment related to him.

The accused testified for himself. He thereby placed himself in the attitude of any other witness in the case. He was then liable to contradiction or impeachment, and it can not properly be said that the testimony impeaching him contradicted, either directly or indirectly, what the Commonwealth had admitted to be true. (Lockard v. The Commonwealth, 87 Ky., 201.) It is true the accused had sworn to the affidavit as to what the absent witness would prove, but the attorney for the State had admitted the statements thereof as facts.

The foundation for the admission of the statements of Calvin Pace as a dying declaration was sufficiently laid. It is well settled that it is inadmissible as such unless made *in extremis*, and under a sense of impend-

ing death.   If the least hope of recovery exists, it can not be admitted as evidence ; and being *ex parte*, and admitted from necessity, it must be clearly shown to come within the well-established rule.   (Peoples v. The Commonwealth, 87 Ky., 487.)   Here it was proven, however, that the dying man said, as did also the circumstances of the case, he could not live, and that he had given up all hope of recovery.

The statement, in substance, was, that when he was shot he was not doing any thing ; did not then see the accused, and that he was shot for nothing.

A dying declaration must relate to the circumstances attending the injury.   Only so much of it is competent as details the manner of it.   So much of the statement as declared "he was shot for nothing" was incompetent, but it merely stated what was otherwise satisfactorily proven.   Its non-introduction could not have produced a different result, and it can not, therefore, be said that the accused was prejudiced by it.

Even if the killing occurred as the accused says it did, yet it is plain he could have avoided taking the life of his relative.   The latter had a small pocket knife is his hand.   He was distant from the accused five or six steps, and even if he did advance toward the appellant two or three steps—and the evidence shows this to be untrue—yet the accused could undoubtedly have gotten out of his way without endangering himself.

The jury were properly instructed as to the law of murder and voluntary manslaughter.   The accused was given the benefit of the reasonable doubt, and the jury were informed that if they found him guilty beyond a

reasonable doubt, but doubted whether it was murder or manslaughter, they must convict of the lesser offense.

In our opinion the fourth instruction is not open to the objections raised to it. After telling the jury that they should acquit the defendant upon the ground of self-defense and apparent necessity, if they believed from the evidence that when he shot the deceased (if he did so) he believed, and had reasonable grounds to believe, that he or Daniel Day was then in immediate danger of great bodily harm at the hands of the deceased, and that, in the exercise of a reasonable judgment, it was necessary, or apparently necessary, to shoot him to avert such danger, real or apparent, this qualification was added to the instruction: "Unless, by his own wrongful act, or the wrongful act of said Day, made the harm to himself or Day, or both, necessary or excusable on the part of said Calvin Pace." This does not assume that any act of the accused or Day was wrongful, and it only tells the jury in substance that the appellant had no right to shoot the deceased to protect Day, if the latter was in fault. This is undoubted law.

It is also urged, that the instruction should have incorporated the idea of reasonable doubt; that the jury should have been told that before they could act upon the qualification they must believe, to the exclusion of a reasonable doubt, that some wrongful act of the accused or Day made the harm necessary or excusable upon the part of the deceased. This would have been proper, but it was substantially done. The succeeding instruction applied the reasonable doubt in

favor of the appellant to the entire case, and the jury could not well have understood that they could find against him as to any material fact unless they believed it proven beyond a reasonable doubt.

The appellant has been fairly tried by his neighbors, and must suffer the consequences of his cruel and needless act.

Judgment affirmed.