CASE 33.—PROSECUTION AGAINST J. H. HENDERSON FOR
SUBORNATION OF PERJURY.—March 13.

# Henderson v. Commonwealth

Appeal from Jefferson Circuit Court, Criminal
Division.

JOSEPH PRYOR Circuit Judge.

Defendant convicted and appeals. Affirmed.

1. Indictment—Subornation of Perjury—Mistake in Name of Per-
son Suborned—Identification—An indictment charging the
defendant, under Kentucky Statutes, section 1177, with
subornation of perjury alleged that "he suborned Mary Farmer
to make oath before the deputy recorder of Louisville that
she was Patsey Finley, and owned a residence at 1315 West
Magazine street worth $1,500, over and above her debts and
liabilities, whereas she was not Patsey Finley and owned
no property whatever." On the trial the proof showed that
the name of the person alleged to have been suborned was
Carrie and not Mary Farmer. Held, The variance is not
fatal to the indictment. The name of the suborned party con-
stitutes but small part of the description of the offense
charged, and while there is an error in the first name of the
woman said to be suborned, there is ample statement in the
charge as a whole to identify the offense so as to preclude
the possibility of the defendant being misled or surprised, and
ample means, if he should be afterward indicted for suborn-
ing Carrie Farmer, to show on a plea of former conviction
or acquittal the identity between the two offenses.

2. Defendant—Witness for Himself—Proof of Previous Conviction
—Competency—On the trial of one charged with a criminal
offense, where the defendant testifies in his own behalf, it is
competent, under section 297 of the Civil Code, in order to
impeach his testimony to ask the defendant if he had not
previously been confined in the penitentiary under a convic-
of forgery.

3. False  Swearing—Procuring—Naming  Offense—Province  of

Henderson v. Commonwealth.

Legislature—While the offense which Carrie Farmer committed was false swearing, and not perjury, this fact cannot avail the defendant, who is charged with subornation of perjury under Kentucky Statutes, section 1177, which provides: "If any person shall unlawfully and corruptly cause or procure another, by any means whatever, to commit the offense described in the four preceding sections, he shall be guilty of subornation of perjury." Though she was sworn under section 1174, one of the four preceding sections named, which creates the offense of false swearing, this section 1177 creates an offense entirely separate and distinct from either perjury or false swearing, and it was within the province of the legislature to name the offense and they named it "Subornation of perjury."

4. Bond Recorder—Deputy—Authority to Administer Oath—Under Kentucky Statutes, section 2947, creating the office of bond recorder in cities of the first class, which provides that, "his deputies shall have power to administer oaths to parties offering as sureties on bonds," a deputy bond recorder is authorized to administer oaths to those applying to be sureties on bonds to be taken by such officer.

FONTAINE T. FOX for appellant.

This indictment and the trial thereon are radically defective in this:

1. The indictment charges appellant with having suborned Mary Farmer to swear falsely, when the false swearing, if any, was done by Carrie Farmer. There is no testimony that Mary and Carrie Farmer are one and the same person, while the evidence is positive that they are not, but are two different women.

2. The deputy had no authority under the statute to administer an oath and take the bond; no bond was sworn to by Carrie Farmer and none accepted. The oath, if any, was not administered in a court, as required by the statutes, 1173, 1174, 1175, 1176 and 1177. The proceeding was not in a court having jurisdiction of the offense.

3. There is no evidence corroborating Carrie Farmer, and she was the accomplice according to her own testimony. There was no evidence or proof to be inferred from any fact deposed to by William Hendricks that could be construed as corroborating her. The testimony of Hendricks does not amount to anything. His threats prevented the consummation of the offense, even if the deputy had legal authority to administer an oath.

4. Illegal evidence introduced by appellee to play upon and excite the racial prejudices of the jury against the appellant. By reason of these prejudices appellant was convicted.

### AUTHORITIES CITED.

Ky. Stats., sections 1173, 1174, 1175, 1176, 1177; Roberson's Ky. Criminal Practice and Procedure; 105 Am. St. Reports, 976; Annotation to Sykes v. Tenn.; Hensley v. Commonwealth, 1 Bush., 11; Civil Code, section 597.

No brief for appellee.

OPINION BY JUDGE BARKER—Affirming.

J. H. Henderson was indicted by the grand jury of Jefferson county, under section 1177 of the Kentucky Statutes of 1903, charged with the offense of subornation of perjury. To this he pleaded not guilty, but a trial resulted in his being found guilty as charged in the indictment, and his punishment fixed at confinement in the penitentiary for a term of two years. From the judgment predicated upon this verdict, he is here on appeal.

The facts constituting the offense with which he stood charged in the court below are, substantially, that he suborned Mary Farmer to make oath before the deputy bond recorder of Louisville that she was Patsey Finley and owned a residence at 1315 West Magazine street worth $1,500 over and above her debts and liabilities, whereas, in truth and in fact, she was not Patsey Finley, and owned no property whatever at 1315 West Magazine street.

Appellant complains of a variance between the evidence and the allegations of the indictment in this: That he was charged with suborning Mary Farmer to commit the crime of false swearing, whereas the evidence shows that the woman who swore falsely

was named Carrie Farmer, and upon this supposed
variance between the pleading and the proof he insists
that he was entitled to a peremptory instruction to
the jury, at the close of the Commonwealth's testi-
mony, to find him not guilty. The case of Hensley
v. Commonwealth, 1 Bush, 11, 89 Am. Dec. 604, is
relied on in support of this position. In that case the
defendant was charged with stealing Steven Daniel's
hog, whereas the evidence showed he stole Phillip
Daniel's hog. We cannot agree to the proposition
that this case supports appellant's theory upon the
point under discussion. In the case cited the name of
the owner of the hog was the only description of the
stolen property, and that being incorrectly stated in
the indictment was fatal to the Commonwealth's case
when the proof came out; it being manifest that the
defendant, if he was afterward indicted for stealing
the property of Phillip Daniel, could not plead either
former acquittal or former conviction in bar of a
second prosecution. But such is not the case here.
The name of the suborned party constitutes but a
small part of the description of the offense with which
appellant is charged, and while it is true there is an
error in the first name of the woman said to be sub-
orned, there is ample statement in the charge as a
whole to identify the offense so as to preclude the
possibility of the defendant being misled or surprised,
and ample means, if he should be afterward indicted
for suborning Carrie Farmer, to show on a plea of
former conviction or acquittal the identity between
the two offenses. This very question arose in the
case of Kriel v. Commonwealth, 5 Bush, 362. There
William Kriel was indicted for the murder of
"Barbara Kriel, the wife of the defendant." It

turned out in the evidence that her name was Marga-
ret, and not Barbara, and it was contended then, as
now, that this was a fatal variance between the
indictment and the evidence; but it was held that,
inasmuch as the dead woman was described in the
indictment as Barbara Kriel, the wife of the defend-
ant, the accused could not have been surprised, and
the variance was immaterial. So here the indictment
shows the name of the accused party whose bond was
to be furnished, the offense with which she was
charged, the amount of her bond, and the exact date
upon which the transaction took place, which makes
it impossible that appellant could have been misled
by the mistake in the name of the person said to have
been suborned by him. The object of the indictment
is to inform the defendant "in ordinary and concise
language of the offense with which he stands charged,
and in such a manner as to enable a person of common
understanding to know what is intended, and with
such a degree of certainty as to enable the court to
pronounce judgment, on conviction, according to the
right of the case." We think the indictment in this
case contains the allegation required by the code, and
that the evidence, so far as the particular matter
under discussion is concerned, substantially supports
the commonwealth's pleading.

Appellant also complains that the court allowed the
Commonwealth, after he had testified in his own
behalf, to ask him, on cross-examination, whether or
not he had been theretofore confined in the peniten-
tiary under conviction of the charge of forgery and
which he was compelled to answer that he had. Sec-
tion 597 of the Civil Code of Practice provides that a
witness may be impeached by showing that he had

been convicted of a felony. Pace v. Commonwealth, 89 Ky. 204, 11 Ky. Law Rep., 407, 12 S. W. 271; Lockard v. Commonwealth, 87 Ky., 201, 10 Ky. Law Rep., 102, 8 S. W. 266.

Conceding for the purposes of this case that Carrie Farmer was appellant's accomplice, the court's instruction to the jury as to the value to be given the testimony of an accomplice is substantially in the language of section 241 of the Criminal Code of Practice, and this was all to which appellant was entitled. Craft v. Commonwealth, 80 Ky. 349, 4 Ky. Law Rep., 182.

While it is undoubtedly true, as urged by appellant, that the offense which Carrie Farmer committed was false swearing, and not perjury, still that cannot avail him here.  He is charged with subornation of perjury under section 1177 of the Kentucky Statutes of 1903, which is as follows: "If any person shall unlawfully and corruptly cause or procure another, by any means whatever, to commit the offense described in the four preceding sections, he shall be guilty of subornation of perjury, and confined in the penitentiary for not less than one nor more than five years."  Section 1174, which creates the offense of false swearing, is one of the four sections embraced within the terms of section 1177.  This section creates an offense entirely distinct and separate from either perjury or false swearing, and it was within the province of the Legislature to name this offense, and they did    name it "subornation of perjury."  The grand jury used the name prescribed by the statute, and the particular facts constituting the offense show that it relates to the offense described in section 1174, which creates the offense of false swearing.

The remaining error urged by the appellant is that the deputy bond recorder was not authorized by the statute creating the office to administer an oath, and that, consequently, what he did was not an offense. Section 2947 of the Kentucky Statutes of 1903 creates the office of bond recorder in cities of the first class, and fixes the term, powers and duties of the principal and his deputies. The particular language upon which appellant bases his claim of the want of power on the part of the deputy to administer the oath is as follows: ''Said deputies shall give bond the same as recorder, and he is hereby given power to administer oaths to parties offering as sureties on bonds, and for all purposes necessary for the proper conduct of his office, to carry into effect the provisions of this act, and enable him to properly execute his duty.'' The contention on the part of appellant overlooks the provisions of sections 457 and 460 of the Kentucky Statutes of 1903 the first of which provides that ''a word importing the singular number only may extend and be applied to several persons or things, as well as to one person or thing, and a word importing the plural number only may extend and be applied to one person or thing as well as to several persons or things,'' and the second of which prescribes that ''the rule of the common law, that statutes in derogation thereof are to be strictly construed, is not to apply to this revision; on the contrary, its provisions are to be liberally construed with a view to promote its objects.'' So that, if there was nothing else in the statute but the particular language upon which appellant bases his view that the deputy bond recorder is not empowered to administer an oath, we would have no difficulty in arriving at the conclusion that, in order

to give the statute its full force and effect, the deputies are included in the singular pronouns used by the Legislature.

But appellant overlooks another part of the same section of the statute, which is as follows: "Said recorder, or one of his deputies, shall be in his office at all hours, for the purpose of taking bonds. All bonds and affidavits shall be returned within twenty-four hours to the proper tribunal." This language clearly shows that it was intended that the deputy should be in the office and take bonds when his principal was not present, and to do this it is necessary that he should be empowered to administer oaths to those applying to be sureties on the bonds to be taken.

On the merits of the case we think appellant's guilt was established by the evidence beyond reasonable controversy, and, perceiving no substantial error to his rights occurring in the procedure of the trial, the judgment is affirmed.

Petition by appellant for rehearing overruled.