EARNEST POWERS *v.* STATE.

'(*Knoxville.* September Term, 1906.)'

1. **MURDER IN THE FIRST DEGREE.** Evidence held insufficient to warrant a conviction.

Evidence held insufficient to warrant a conviction of murder in the first degree. (*Post, pp.* 366-368.)

2. **CHARGE OF COURT.** Should not state facts as proven, but leave them to the jury in a criminal case.

The trial judge in a criminal case should not state to the jury any fact as one proven, but should leave all of the facts to the jury. (*Post, p.* 369.)

3. **SAME.** Same. But charge assuming uncontroverted facts as proven is not reversible error, where not prejudicial.

But where the facts stated in the charge as proven were uncontroverted, and the accused was not prejudiced by the statement made, the error is not a reversible one. (*Post, p.* 369.)

4. **SAME.** Objection to charge formally made without assignment of reason or citation of authority will not be considered, when.

Objection to an instruction in the charge of the court not pressed upon appeal, but made merely *pro forma*, without the assignment of any ground or the citation of any authority in support thereof, will not be considered by the supreme court. (*Post, p.* 369.)

5. **SAME.** Too narrow as to character of defendant put in evidence is not reversible error where there was no special request for further specific instructions.

The character of the accused, when put in evidence by himself, should be considered as bearing upon every issue in the case in determining whether there was a reasonable doubt of his guilt, and a charge that his character might be looked to in

judging of his purpose and intention at the time of the killing is objectionable as being too narrow, but is not reversible error where there was no special request for further specific instructions. (*Post, pp.* 369-371.)

Cases cited and approved: Roman v. State, 1 Shan. Tenn. Cas., 470, 472; Phelan v. State, 114 Tenn., 483, 507.

6. **SAME. Same. Meagerness as to dying declarations is not reversible error in the absence of a special request formulating the instructions desired.**

The meagerness of an instruction that dying declarations made by the deceased were entitled to the same weight and sanctity as evidence testified to under oath, given in answer to a general request to charge upon the subject of dying declarations is not ground for reversal, in the absence of a special request formulating the fuller instruction desired. (*Post, pp.* 371-372.)

7. **SAME. Failure to charge as to offenses included in indictment for murder where there is no evidence applicable to them is not reversible error.**

The court's failure to charge upon the law applicable to involuntary manslaughter, assault and battery, and simple assault, included in the indictment for murder in the first degree, is not prejudicial to the accused, and, therefore, not reversible error, where there was no evidence applicable to such offenses. (*Post, p.* 372.)

Cases cited and approved: Good v. State, 1 Lea, 293; State v. Hargrove, 13 Lea, 178, 184; State v. Parker, 13 Lea, 221; Tarvers v. State, 90 Tenn., 485.

8. **CRIMINAL LAW. Character of the accused is that at and before the offense, and not a reputation subsequently acquired.**

The reputation of the accused upon the subject of quietness and good citizenship available for or against him in a criminal case, when he has put his character in issue, is that which he bore at and before the commission of the act for which he is

Powers v. State.

put on trial, not a reputation subsequently acquired or created for or against him. (*Post, pp.* 372-374.)

Cases cited and approved: Lea v. State, 94 Tenn., 495, 497; Moore v. State, 96 Tenn., 209, 218; State v. Johnson, 60 N. C., 151, 152.

9. SAME  Same.  Case in judgment.

It is error to permit a character witness to state that after the homicide he heard reports that the accused had run his step-father away from home with a knife, had threatened to kill another school-teacher besides the deceased, and had lain in wait for him with a shotgun. (*Post, pp.* 372-374.)

10. SAME.  Same.  Accused cannot be impeached as a witness by subsequently reputed specific acts of viciousness, when.

Where the accused testifies in his own behalf and puts his character in issue, evidence of reports of the commission of specific acts of viciousness coming to the impeaching witness after the homicide is inadmissible to impeach the accused as a witness. (*Post, pp.* 374-380.)

Cases cited and approved: Gilliam v. State, 1 Head, 38; State v. Beckner (Mo.), 91 S. W., 892, 3 L. R. A. (N. S.), 535, and citations therein.

11. SAME.  Accused cannot be impeached as a witness by testimony of other witnesses as to specific acts, when.

The character of the accused as a witness in his own behalf cannot be impeached by proof of special instances of other crimes attempted or committed, because special matters cannot be proved against a witness by third persons, but such inquiry must be confined to matters of general reputation. (*Post, p.* 379.)

Cases cited and approved: Ford v. Ford, 7 Humph., 92, 100-102; Gilliam v. State, 1 Head, 39; Merriman v. State, 3 Lea, 394; Zanone v. State, 97 Tenn., 101, 115.

**12. SAME.** But accused may be impeached as a witness by questions asked him as to specific acts, but the inquiry is closed with his denial.

But the accused as a witness in his own behalf may be questioned on cross-examination, like any other witness, concerning independent matters of a kind to impeach his character for truthfulness or general moral character, or for the purpose of testing his own trustworthiness, but the inquiry must pause with his denial. (*Post, p.* 379.)

Cases cited and approved: Zanone v. State, 97 Tenn., 101, 115; Ryan v. State, 97 Tenn., 206, 213.

---

FROM McMINN.

---

Appeal in error from the Circuit Court of McMinn County.—GEORGE L. BURKE, Judge.

BURKETT, MANSFIELD & MILLER, JAMES COLLINS and LEWIS SHEPHERD, for Powers.

ATTORNEY-GENERAL CATES, YOUNG & LASATER, E. B. MADISON and E. L. ROBERTS, for State.

---

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was indicted in the circuit court of McMinn county for the murder of one Elbert Wattenbarger, was convicted of murder in the first degree, and was sentenced to confinement in the State penitentiary

for the term of his natural life.   From this judgment he has appealed, and has here assigned errors.

The plaintiff in error at the time of the homicide was a boy of between fifteen and sixteen years of age and attended the school over which Mr. Wattenbarger presided.   The afternoon before the homicide plaintiff in error and another student, Charlie Stanton, a little boy between twelve and thirteen years of age, had been engaged in throwing stones at each other, with the result that the latter was struck with a stone and knocked down.   The father of the little boy complained the next morning to Mr. Wattenbarger, and after school was opened Mr. Wattenbarger called up Charlie Stanton and the plaintiff in error, and questioned them about the incident before referred to, and sought to make the boys promise that they would not throw stones any more. Charlie Stanton readily promised.   The plaintiff in error, however, would only make a conditional promise. According to the testimony of the witnesses for the State, he said that it would depend upon circumstances whether he threw stones or not.   According to the witnesses for the plaintiff in error, he said that it would depend upon circumstances; if others did not throw stones at him, he would not at them.   The teacher, not being satisfied with this conditional promise, sat a moment with his head leaned upon his hands, as if in thought, and then stepped to the window and looked out, and returned to the platform where his seat was, and said to the plaintiff in error that he must whip him, and

commanded him to rise. The plaintiff in error arose and stood before him. They were then very close together. The teacher raised his switch and struck the plaintiff in error one blow over the shoulder. From this point onward the testimony is conflicting. According to the witnesses for the State, plaintiff in error, after receiving the first blow with the switch, raised his left hand and endeavored to catch the switch, and at the same time drew his right hand from his pocket with a knife in it. The teacher, on seeing the knife, exclaimed vigorously, "You!" and threw out his left hand as if to ward off the expected blow from the knife, but did not succeed in doing so. His left hand, with which he was attempting to protect himself, passed above the arm of plaintiff in error and struck the latter over the eye, turning his head slightly around. Plaintiff in error about the same time stabbed the teacher in the heart, from which wound he died within an hour or so afterwards. According to the evidence of the witnesses for plaintiff in error, the teacher struck the plaintiff in error several times with the switch and broke it, and then struck him with his fist, and during the progress of this beating the boy stabbed him with a pocketknife.

We shall not discuss the evidence, or decide which view we think is supported by the weight of the testimony, further than to say that we do not think the evidence makes out a case of murder in the first degree.

Before passing to an assignment upon a question of law which we think presents a reversible error, we shall

consider other assignments proper to be passed on in view of the new trial that must be granted.

It is said that the trial judge committed error in making the following statement to the jury in the course of his charge:

"There are a number of admitted facts in this record, to wit: That the tragedy occurred in McMinn county and prior to the finding of the indictment in this case, that deceased was at the time teaching school in this county at Tranquillity Schoolhouse, that defendant was a pupil in his school, and that the tragedy grew out of the teacher's chastisement of the defendant as a pupil in his school."

The trial judge in a criminal case should not state to the jury any fact as one proven, but should leave all of the facts to the jury. However, the facts stated were not controverted in the record, and we can see that no injury was done by the statement made, and for this reason the error was not reversible.

Objection is made to the instruction which the trial judge gave upon the subject of the right of a schoolmaster to chastise his pupils in a reasonable manner for insubordination, but no ground is assigned in support of the objection, and no authority cited, and it is not pressed, but made merely *pro forma.* We need not, therefore, give it further consideration.

It is insisted the trial judge erred in charging the jury as follows:

117 Tenn—24

"Defendant has put his character in evidence, which he alone could do, and it may be looked to in judging of the defendant's purpose and intention at the time of the killing."

The objection made is that the defendant's character was a witness in his favor upon every issue in the case, and that the trial judge should not have limited its effect "to his purpose and intention at the time of the killing."

In *Roman* v. *State,* 1 Shan. Tenn. Cas. 470, 472, it is said: "The defendant is always entitled to the benefit of his good character, and a jury may look to this, with the other evidence, to see if there is a reasonable doubt of his guilt."

In 4 Elliott on Evidence, sec. 2721, it is said: "It is now well settled in most jurisdictions, contrary to some of the older decisions, that evidence of good character is admissible and entitled to consideration on the question of guilt along with the other evidence, not only in doubtful cases, or cases in which the other evidence is of itself contradictory or unconvincing, but also in all proper cases, no matter whether the other evidence, in and of itself, is apparently conclusive or inconclusive."

In section 3039 of the same book it is said: "It is the general rule that the defendant's good character or reputation for peace and quiet is admissible in his favor. But the evidence must be confined, in general, to the trait involved in the crime charged, and it has been held that the defendant cannot show his good character

and conduct subsequent to the commission of the crime. Thus, it has been held that, although evidence of the previous good character for peace and quietness of the defendant is admissible, evidence of his previous moral character is not. And whether the accused is a brave man or a coward has been held to be immaterial on a trial for murder."

The charge of the circuit judge should have been broader upon the subject; but, in the absence of a special request, we do not think that his failure to give more liberal instructions upon this subject could be treated as reversible error. *Phelan* v. *State,* 114 Tenn., 483, 507, 88 S. W., 1040. The charge upon this subject was correct as far as it went.

It is next insisted that the charge of the circuit judge upon the subject of dying declarations was too meager. He said on this subject: "Dying declarations made by the deceased in this case have the same weight and sanctity as evidence testified to under oath." He gave this instruction in answer to a general request upon the part of counsel to charge upon the subject, but no special request was made to the court formulating the instruction desired. We are of opinion that, in the absence of such special request, there could be no reversal on the meagerness of the charge upon this subject. There was, indeed, no question as to the fact that deceased was fully aware of his impending death, or of the good character of the deceased. There was some slight contradiction in the testimony of several witnesses who were

present as to what was said by deceased upon the state of the boy's mind at the time the stabbing was done. However, this matter would fall under the instructions previously given in the charge concerning contradictions in the evidence. We do not think any injury was done to the prisoner by the meagerness of the charge upon this subject.

It is insisted that the circuit judge erred in not charging upon the law applicable to involuntary manslaughter, assault and battery, and simple assault. There was no error in this respect. There was no evidence that would have justified such a charge. It is true that the general rule is that the trial judge must charge upon every offense embraced within the indictment; but there is another rule to the effect that there will be no reversal for his failure to do so, when this court can see that the prisoner suffered no injury by reason of such omission. *Good* v. *State,* 1 Lea, 293; *State* v. *Hargrove,* 13 Lea, 178, 184; *State* v. *Parker,* 13 Lea, 221; *Tarvers* v. *State,* 90 Tenn., 485, 16 S. W., 1041.

On the trial in the court below Steve Bales, a witness for the State, testified on cross-examination to the good character of the plaintiff in error. On re-examination the witness was permitted to state, over the objection of plaintiff in error, that since the occurrence at the schoolhouse, the homicide of Wattenbarger, he had "heard reports that the Powers boy had run his stepfather away from home with a knife, and had threatened to kill another school-teacher, and had lain in wait for

him with a shotgun." This evidence was objected to on the ground that the reports referred to had not been heard until after the killing of Wattenbarger. The objection was overruled, and the plaintiff in error excepted. After the plaintiff in error had gone upon the witness stand and had testified in his own behalf, and after other witnesses had been introduced by him and had testified to his good character, the State was permitted to prove by two of these witnesses, C. A. Whaley and Huff Farrell, on cross-examination, the same things previously shown by Bales. Objection was made by plaintiff in error on the same ground, but this was overruled by the trial judge. This action is assigned as error.

This testimony, while belonging to a class of evidence which would be competent in general as against the defendant's character for peace and quietness and good order, offered by him in aid of his defense to the charge contained in the indictment, yet was not competent in the present case, because the matter testified to came to the knowledge of the witnesses after the commission of the homicide which was the subject of investigation. The reputation which a defendant has made upon the subject of quietness and good citizenship available for or against him in a criminal cause when he puts his character in issue is that which he bore at and before the taking place of the act for which he is upon trial, not a reputation subsequently acquired or created for or against him. A different view would put a premium on the manufacturing of evidence. *Lea* v. *State,* 94

Tenn., 495, 497, 29 S. W., 900; *Moore* v. *State,* 96 Tenn., 209, 218, 33 S. W., 1046; *State* v. *Johnson,* 60 N. C., 151, 152; 1 Elliott on Evidence, sec. 168, note 144.

Was the evidence competent for the purpose of impeaching plaintiff in error in his capacity of witness?

When the prisoner in a criminal case has put his character in issue as an aid to his defense, and has also testified in his own behalf, and has thus subjected himself to the rules which apply in the impeachment of witnesses and those which apply in protecting them from such attack, and the particular evidence offered is for any reason incompetent in the first aspect, a very perplexing question is presented, especially in jurisdictions such as our own, where the inquiry as to a witness' reputation is not confined to truth and veracity merely, but ranges over his whole moral character. *Gilliam* v. *State,* 1 Head, 38, 73 Am. Dec., 161.

A recent case decided by the supreme court of Missouri, *State* v. *Beckner,* 91 S. W., 892, 3 L. R. A. (N. S.), 535, sheds light upon the question. In that case in the trial court the attorney for the State asked the following question: "Do you know the general reputation of the defendant for peace and quietness, or turbulence or violence, in the neighborhood where he lives?" The prisoner had not put his character in issue, but the State insisted that the evidence was competent, because he had testified as a witness in his own behalf, and, having done so, that he occupied the position of any other witness, and was subject to be cross-examined as to

any matter pertaining to the issue, and might be contradicted and impeached as any other witness, and tried by the same tests; and the evidence was admitted by the trial judge on these grounds. The supreme court of Missouri, after stating that the rule in that jurisdiction had long been that, for the purpose of discrediting a witness, the opposite party was not restricted to inquiring into the general reputation of the witness for truth and veracity, but might inquire into the witness' moral character generally, observed that there were thus presented two well-defined rules in apparent conflict; that, when a defendant is permitted to testify as a witness in his own behalf, he occupies a dual position, that of accused and that of witness; that, unless the defendant has first offered evidence of good character in exoneration of the crime charged, the State has no right to attack his character as bad; that, even when this is the case, the approved rule is that both the defendant and the State are restricted to evidence as to his character pro and con as to the specific trait involved in the controverted act or offense; that the ground upon which such testimony is admissible is that good character tends to lessen the probability of guilt; that, on the other hand, the defendant, in his character as a witness, is not permitted to offer his good character in evidence to corroborate his testimony, until it has been attacked by the State. The court then proceeded:

"The difficulty arising out of the foregoing rules, when a statute like ours permits a defendant in a criminal

prosecution to testify in his own behalf, has been encountered by the courts of last resort in many of the States, as it was in this court in *State* v. *Clinton,* 67 Mo., 380, 29 Am. Rep., 506.

"In *Lockard* v. *Com.,* 87 Ky., 201, 8 S. W., 266, under a statute very similar to ours on this subject, the defendant testified in his own behalf, but offered no evidence as to his character. The commonwealth then introduced several witnesses, who were, over the appellant's objection, permitted to testify that, while they knew nothing of defendant's character for truthfulness, yet his general moral character was bad. In Kentucky, as in this State, it had been decided at an early day that evidence of the general moral character of a witness was admissible upon the ground, as was said in the case of *Tacket* v. *May,* 3 Dana, 80, that a witness whose moral character is bad is not as credible as one whose moral character is good. Holt, J., speaking for the whole court, discussed the effect of the statute, in view of the settled rule of decision in that State that the general bad character of any witness might be shown to impeach him. He met the objection, urged by many law writers and many able judges, that impeachment of the general moral character of a defendant as a witness would affect him as a defendant, and would violate the rule that until he put his character in issue the State could not assail it, and said, 'When, however, the defendant becomes a witness, he voluntarily assumes another character,' and reached the conclusion that public policy and individual

safety forbid that his reputation for veracity should then be beyond inquiry; that, if the testimony of disinterested witnesses may be impaired and destroyed by evidence of general bad moral character, why should not defendant's as a witness be open to a like attack? The court held that these considerations must prevail, over the suggestion that, if the general moral character of the accused when he becomes a witness can be assailed, it is in effect a violation of the rule that, in a criminal case, the defendant alone can put it in issue.

"Among many other cases the court expressly considered *State* v. *Clinton*, supra. In Alabama, as in this State, the rule of decision has long been that a witness might be impeached by assailing his general moral character, and, when a defendant offers himself as a witness, he is subject to impeachment by assailing his general moral character; but it is held by the supreme court of that State in *Clarke* v. *State*, 78 Ala., 474, 56 Am. Rep., 45, that, when it was said that his general moral character could be impeached, only so much of his moral character as reflected on his credibility as a witness was open to assault by the State in the first instance; and in *Dolan* v. *State*, 81 Ala., loc. cit. 19, 1 South, 713, after citing *Clarke* v. *State*, as showing that only so much of his moral character as reflected on his credibility as a witness was open to assault by the State in the first instance, it is said: 'A character for violence or turbulence sheds no light upon the credibility of a witness, and such testimony was not admissible, unless the de-

fendant had first put his character for peace in issue.'
Whatever may have been the differences in this court as
to whether certain specific traits of immorality affected
the credibility of a witness, it is clear that the case of
*State* v. *Shields*, 13 Mo. 236, 53 Am. Dec., 147, which is
the foundation of the rule that, in impeaching a witness,
the inquiry may extend to his moral character generally,
is predicated upon the ground that loss of moral prin-
ciple evidenced by the practice of a particular vice af-
fects his credibility. But, accepting this as an estab-
lished rule, was it competent for the State to assail the
defendant's character before he placed his character in
issue, by proving that he was a violent and turbulent
man? As we have already seen, the Alabama court,
while adopting the rule that, when the defendant offered
himself as a witness, he could be impeached by proving
his general bad character for morality, yet rejected evi-
dence in a homicide case of the character for violence or
turbulence as casting no light on his credibility. It
will be observed that the question propounded to the
impeaching witnesses in this case did not involve his
general reputation for truth and veracity, nor his general
reputation for immorality, but was confined to the spe-
cific charge as to his reputation of being a violent and
turbulent man. This evidence, we think, was not direct-
ed to the impeachment of the defendant in his character
as a witness, but was direct evidence tending to impeach
his character as a defendant only for turbulence and
violence, when he had not put his character in issue."

Powers v. State.

We are of opinion that the views expressed in the foregoing excerpt are sound, and therefore that the evidence offered and admitted in the present case in favor of the State was incompetent for the purpose of impeaching the defendant below as a witness in his own behalf. It was also incompetent as evidence impeaching the character of the plaintiff in error as a witness, if it be treated as an effort to prove special instances of other crimes attempted or committed, because special matters cannot be proven against a witness by third persons, but such inquiry must be confined to matters of general reputation. *Zanone* v. *State,* 97 Tenn., 101, 115, 36 S. W., 711, 35 L. R. A., 556; *Ford* v. *Ford,* 7 Humph., 92, 100-102; *Merriman* v. *State,* 3 Lea, 394; *Gilliam* v. *State,* 1 Head, 39, 73 Am. Dec., 161; 2 Elliott on Evidence, sec. 978. The rule is different when the defendant himself is asked on cross-examination independent matters of a kind to impeach his character for truthfulness, or general moral character, or where any other witness is, upon cross-examination, asked such things for the purpose of testing his own trustworthiness. *Zanone* v. *State,* supra, and cases cited therein; *Ryan* v. *State,* 97 Tenn., 206, 213, *et seq.,* 36 S. W., 930, and cases cited; 2 Elliott on Evidence, sec. 978. But in such cases the inquiry must pause with the witness' denial, since the main issue must not be obscured and lost sight of in the pursuit of collateral inquiries.

We have seen that for the reason previously given the testimony referred to was incompetent as evidence

against the character of plaintiff in error for peace and quietness. Being admissible upon neither ground, its admission against the defendant below was error, for which the judgment must be reversed.