## Allison v. Commonwealth.

(Decided April 22, 1938.)

(As Modified on Denial of Rehearing May 27, 1938.)

A. W. MANN and JACK R. PHIPPS for appellant.

HUBERT MEREDITH, Attorney General, and GUY H. HERD-MAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

About 10:30 p. m. on a Sunday in April, 1937, Richard Allison shot Clarence Doyle. After about six weeks in a hospital, Doyle recovered. Allison was charged by indictment with malicious shooting and upon his trial pleaded self-defense. He was convicted, his punishment fixed at four years in the penitentiary, his motion for a new trial was overruled, and he has appealed.

According to Allison, he had known Doyle for about three years and about two years before this shooting he and Doyle had trouble over the latter's attention to Allison's wife.

On the evening of the shooting in the case now before us Allison had been out in town on some business and on his return to his restaurant he found Doyle hugging Mrs. Allison. As he came in, some one said to Doyle: "You had better take your hands off that man's wife." Allison says Doyle turned around and put his hands in his pants pocket and started towards him; that he told Doyle to stop, but he did not; and "I reached up on my kitchen cabinet, got my gun and I just walked out and plugged him." He says Doyle had a gun and he shot him because Doyle was coming on him with a gun and he shot to save his life. Only one other witness testifies Doyle had a gun. Doyle denies he had a gun and all other witnesses who saw Doyle then, and those who searched him after he fell, say Doyle was unarmed. This is copied from the testimony of Officer Thompson who arrived while Doyle was still lying where he fell:

"Q. Did the defendant, Allison, undertake to tell you there at that time? A. Yes, he said he was hugging his wife and he 'called his hand' and he came towards him with his hand in his pocket and he shot him.

"Q. Did he say anything about this man having a pistol drawn on him? A. No, sir.

"Q. Did you see any pistol, other than Richard Allison's? A. No sir."

This was a typical case for a jury and its verdict must stand if there are no errors in the record that could have caused the jury to reach an erroneous conclusion.

## The Instructions.

By the Kentucky Statutes, the punishment for the intentional wounding of another without legal excuse is fixed as follows: Where death results, by section 1149 if done with malice, and by section 1150 if done without malice. Where death does not result, by section 1166 if done with malice and by section 1242 if done without malice. In this case the court gave four instructions. No. 1 was drawn under section 1166, and No. 2 under section 1242, Kentucky Statutes, No. 3, was an instruction on self-defense, and No. 4 was drawn under sections 238 and 239 of the Kentucky Code of Practice in Criminal Cases.

On this appeal Allison's complaint of these instructions has narrowed down to the omission of the word "previous" from instruction No. 2, which instruction we will now give with this word inclosed by parentheses inserted at the point where Allison contends it should have been:

"If, however, the jury believe from all the evidence in this case, beyond a reasonable doubt, that in this county and within one year next before the finding of the indictment herein, the accused, Richard Allison, in sudden affray, or in sudden heat and passion, without (previous) malice, and not in his own apparently necessary self-defense, did shoot at and wound Clarence Doyle, with the weapon, and in the manner described in Instruction No. 1, then they will find him guilty of a misdemeanor, an offense included in the indictment, and

fix his punishment by a fine of not less than Fifty Dollars nor more than Five Hundred Dollars, in their reasonable discretion, or by the confinement in the County jail in their reasonable discretion for not less than six months nor more than one year, or both so fine and imprison him in their reasonable discretion.''

A complete answer to this complaint is found in Howard v. Com., 71 S. W. 446, 24 Ky. Law Rep. 1301.

### Other Complaints.

Allison complains of the court's action in allowing the commonwealth to introduce in rebuttal, evidence that should have been introduced in chief. This was technically erroneous, but in view of the unimportance of this evidence, the action of the court in allowing it to be introduced out of order was not an abuse of discretion and was not prejudicial.

### Other Crimes.

The appellant complains of the action of the court in allowing the commonwealth to introduce evidence of other crimes and that his substantial rights were prejudiced thereby. Defendant testified in his own behalf, and this is taken from the conclusion of his testimony, on his first cross-examination:

''Q. Have you been heretofore convicted of a felony? A. Yes, sir.

''Q. How many times? A. Once.''

The matter should have been allowed to rest there, but defendant's counsel brought out this on his reexamination of the defendant:

''Q. What were you convicted for? A. Well, I wasn't convicted here, tried with Charlie Red and came clear.

''Q. At the time you were convicted, what were you convicted for? A. I was convicted over whisky in Louisa.

''Q. And you were acquitted on the other charge? A. Yes sir.''

In his recross-examination this is found:

''Q. Don't you remember that they tried you

on account of your relations with a white woman up there? (Objection sustained.)

"Q. It wasn't for whiskey was it? A. Well, the way it was—You want to know?

"Q. It wasn't for whiskey was it? A. Well, a certain portion of it, yes sir.

"Q. Was there a perjury charge connected with it? That is false swearing, swearing a lie? A. Not that I know of.

"Q. What were you convicted for? A. Well, they had me up for whiskey as well as I remember. Then they tried to make it appear that I was running after a white woman but they never did see me with this woman or nothing.

"Q. And didn't you testify that you were not with this white woman and then wasn't you indicted on a charge of false swearing? A. Yes, sir.

"Q. And wasn't the charge on which you were convicted a charge of having testified falsely in connection with the woman transaction, that is right, isn't it? A. You know all about the case, as well as I do. You prosecuted it. I swore I hadn't done nothing only work for this lady these 17 years and she worked 8 years and is dead now. You know the one that started all this stuff. None of these people never seen me any more than speak to this girl.

"Q. And following that you were indicted and tried on a false swearing charge, because of what you had sworn? A. No, sir, I will explain to you what I was tried for.

"Q. You know what you were convicted and sent to the penitentiary for, don't you? A. That is what I am trying to tell you now.

"Q. It wasn't on a charge of having liquor was it? A. It was on a charge of keeping her and giving her a coat and Mr. McClure said it was his'n."

From this we see the attorney for the commonwealth was endeavoring to show the defendant had been convicted twice and that he finally did so. The defendant was endeavoring to withhold the truth, and under the circumstances the attorney for the common-

wealth had the right to pursue his inquiry and in order to cope with the defendant's evasion, had the right to make his questions sufficiently specific and persistent to bring out the truth. It was unfortunate for the defendant that this got into the record, but he brought it upon himself by his efforts to conceal the truth.

The active efforts of this witness by his evasive and deceptive answers justify the efforts of the commonwealth's attorney to bring out the truth. The defendant himself was endeavoring to conceal the number of his previous convictions and by his answers to color and disguise the nature of his convictions. By his studied and active efforts to accomplish that he gave to the commonwealth's attorney cause for pursuing his inquiry as he did. Anyway, immediately after the close of this examination the court gave this admonition to the jury as to the purpose for which this evidence was admitted:

"Ladies and gentlemen of the Jury: The testimony with respect to the defendant having been previously convicted of a felony charge is permitted to go to you for the purpose of effecting his credibility, if in your judgment it does effect it, and for no other purpose."

That admonition to the jury was all to which Allison was entitled. He did not have to testify if he did not want to do so. Section 1645, Kentucky Statutes, gives him the right to testify in his own behalf if he so desires and when he elected to do so he became subject to impeachment just as any other witness.

See Lockard v. Com., 87 Ky. 201, 8 S. W. 266, 10 Ky. Law Rep. 102; Pace v. Com., 89 Ky. 204, 12 S. W. 271, 11 Ky. Law Rep. 407; Burdette v. Com., 93 Ky. 76, 18 S. W. 1011, 13 Ky. Law Rep. 960. See also "Accused as a Witness," under section 1085, p. 867, and section 1097, page 893, of 70 C. J.

By section 597 of the Civil Code of Practice of Kentucky proof of conviction of a felony is made one of the means of impeaching a witness. Two convictions import more moral turpitude than one. Since the commonwealth had the right to prove one conviction, it certainly had the right to prove two or more, if it could. We are unable to find in this cross-examination anything of which Allison can complain.

Allison contends he was entitled to a directed ac-

quittal, but he is mistaken. He had admitted the wounding, and after that he had to justify or excuse what he had done. See Simmons v. Com., 207 Ky. 570, 269 S. W. 732. It is clearly shown from Allison's own testimony he shot Doyle because of jealousy and not because of any immediate fear of bodily harm.

Judgment affirmed.