J. C. CRAWFORD *v*. STATE OF TENNESSEE.

(*Knoxville,* September Term, 1954.)

Opinion filed November 16, 1954.

Petition to Rehear November 29, 1954.

Petition to Rehear denied December 16, 1954.

412

JOHN R. TODD, JR., and WM. S. TODD, of Kingsport, for plaintiff.

Nat Tipton, Assistant Attorney General, for the State.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

The defendant appeals from a conviction for the homicide of C. M. Bragg, the conviction being for voluntary manslaughter with a maximum punishment fixed at four years in the State prison.

The three assignments of error are (1) the admission of a dying declaration, (2) permitting the defendant's character witnesses to be questioned as to whether they had heard or known about defendant having cut with a knife a third party on a previous occasion, and (3) the alleged insufficiency of the evidence to support the verdict.

The homicide occurred about 3:00 p. m. in the afternoon at the home of defendant when nobody was present except the defendant and the deceased. The defendant shot the deceased one time with a shotgun, the load hitting him in the abdomen just to one side of the navel and making a large hole from which a considerable quantity of his intestines protruded. The deceased was eventually taken to the hospital in Kingsport about 5:00 o'clock where he died about 45 minutes later. The defendant admitted that he shot the deceased but claimed self-defense.

It appears that the two were previously acquainted with one another and lived in the same general section of Sullivan County.

In the forenoon of the same day of the homicide the defendant and a friend named Shipley while riding in the car of the latter, picked up the deceased along the road and when they came to the home of the deceased the three

of them went in where the defendant purchased a quantity of beer which all three of them drank. After about the first two rounds of beer Shipley departed. Defendant then bought more beer and started home with it and was accompanied by the deceased. After they arrived at the home of defendant which was a one-room frame building about 12x20 feet in dimension, the two of them consumed all of the beer and defendant testified that he fell asleep; that about 3:00 o'clock he was awakened by something striking him on the head and that he felt blood running down his face; that he looked up and saw the deceased standing near the rear door of the room threatening to kill him with a knife in his hand; that he grabbed his shotgun which was at the head of the bed where defendant was lying, raised the gun up about the height of his hip and fired, striking the defendant as above stated. He immediately left the cabin and told several people that he had killed a man and asked for assistance in getting in touch with the law to report same. The report of the homicide seems to have spread rather quickly and some officers immediately investigated. It appears that the defendant did not mention the claim of the deceased having a knife to any of the parties to whom he talked immediately afterwards and he seemed to be under the impression at the time that the deceased had struck him with a beer can. It does appear that he had a slight cut above the right eye stated to be variously from one-half inch to two inches long which had bled some on that side of his face. It also appears that defendant is a young man about 24 years of age, about 5½ feet tall and weighs about 150 pounds, whereas the deceased was over 6 feet tall, weighed over 200 pounds and was an older man; apparently they had never had any trouble between themselves before the homicide which occurred in August of

1953. No knife was found at the scene of the homicide nor was any found when the deceased was searched at the hospital.

With reference to the first assignment involving the dying declaration, the brother of the deceased testified that he rode in the ambulance with the deceased on the way to the hospital, that he was conscious until he died, and that while in the ambulance the deceased said:

"A. He said he was sitting there in the chair kindly dozed off to sleep, that he had $150 in his shirt pocket, and he felt something, and said, he raised up and Crawford shot him, and he looked and the $150 was off of him."

The witness then testified that the deceased said he was going to die, to get him to the hospital as quick as he could, that that was the first thing he said. The witness then testified further:

"A. He said to get him to the hospital as quick as we could, he was going to die if they didn't do something for him."

Then the Court asked:

"Did he say when he thought he was going to die?"

The witness replied:

"He didn't say exactly."

The insistence is that this purported dying declaration is inadmissible for the reason that the alleged statement of the deceased as to his condition was conditional and does not show a sense of impending death on the part of the deceased and was not made in extremis.

 The record shows that counsel for each side submitted their authorities and that the Court gave the question serious consideration before admitting this evidence. The evidence shows clearly that the size of the wound made by the shotgun was large and that the de-

ceased's intestines were protruding, as was testified to the extent of about a gallon, so that we think that the case cited by the State, *Dickason* v. *State,* 139 Tenn. 601, 202 S. W. 922, is controlling. That is to say, even though there may have been some confusion, or even contradiction in the testimony of the brother of the deceased, the above case states that the sense of impending death may be shown by the language of the deceased or inferred from the character of the wound or set up by the testimony of physicians or other attendants; that our cases attach much importance to the character of the wound; and that where the wound is obviously of a desperate nature the wounded man can scarcely contemplate it with any expectation of life.

We, therefore, find no error in the action of the Court in admitting this dying declaration.

Although not assigned as error, the further complaint is made of the language of the Court in a part of its charge as follows:

"This testimony comes to you through others and should be received and considered by you as evidence in the case, as if the deceased had given his sworn statement in the form of a deposition."

This part of the charge as given, taken alone or under other circumstances, might be reversible error but in this case the Court went further and fully instructed the jury that they should first determine whether or not the deceased made the statement as detailed by the witness, and if so, that the declaration should be received with great caution, giving the reasons why that is so, all in accordance with the charge in *Crittendon* v. *State,* 157 Tenn. 403, 8 S. W. (2d) 371.

While this court may review the action of the Trial Court in the admission of a dying declaration, it

will not reverse except for manifest error and in this case we do not find such error. The assignment is, therefore, overruled.

Considering next the third assignment of error, complaint is made that the Court allowed the State on cross-examination of two of the defendant's witnesses who gave him a good character to ask them if it was a part of defendant's general reputation that he cut a man less than a year ago; and to ask a third whether he knew about defendant cutting the man.

▮ The questions and answers were competent for the purpose only of testing the accuracy and credibility of the character witnesses, that is the value of their evidence in chief, but such evidence is not substantive, relevant evidence of defendant's good or bad character. The question is directly ruled in *Tucker* v. *State,* 149 Tenn. 98, 257 S. W. 850.

It is pointed out that the authorities hold that, while character or reputation can be proved only by evidence of general reputation in the community and not by specific acts nor from personal knowledge of the witness, and that evidence of good character cannot be rebutted by evidence of specific acts of misconduct or of rumors of same, but when a witness gives a party a good character, he may be cross-examined as to particular acts or charges or rumors of misconduct he has heard, or as to facts known to him, including what the witness himself may have said at a particular time; all, however, only for the purpose of testing the value of the witnesses' evidence in chief.

▮ The above is not inconsistent with the case of *Harris* v. *State,* 189 Tenn. 635, 227 S. W. (2d) 8, stating the rule that proof of a crime other than that alleged in the indictment is not admissible against the defendant unless it tends directly to prove him guilty of the offense

for which he is on trial and stating the exceptional circumstances which may render such proof directly relevant. The effort in that type of case is to offer the proof as substantive evidence of the crime for which accused is indicted.

We, therefore, overrule the third assignment of error. █ With reference to the second assignment, we do not think the evidence, therefore, preponderates against the verdict. The evidence is rather conclusive that the deceased had no knife and the jury was warranted in believing that was an afterthought on the part of the defendant. The jury evidently believed that defendant did suffer a slight wound on his forehead from some cause or other and it is likely that they felt that the defendant was awakened from somewhat of a drunken stupor and acted under what may have appeared to him to be adequate provocation, although the evidence does not disclose any reason why the deceased would have attacked the defendant except that the deceased also may have been in a somewhat drunken stupor.

All assignments of error are overruled and the judgment of the lower Court is affirmed.

### ON PETITION TO REHEAR.

The basis of the petition to rehear is that this Court misunderstood appellant's assignment of error No. 3 in that (quoting from the petition):

"The factual situation from which said assignment of error arises is clear, definite and undisputed; and the gist of said assigned error is that the learned Trial Court erred in allowing the State to ask the plaintiff-in-error's character witnesses, over his objection, whether it was part of the plaintiff-in-error's general reputation that he had, less than a year ago,

cut one Roy Hashbarger with a knife and left him for dead, *without limiting the purpose for which the jury was to consider the evidence so adduced, but allowing said evidence to go to the jury without any limitation whatever as to its scope, its meaning or its purpose for consideration.*"

Counsel relies upon the next to the last paragraph of the case of *Tucker* v. *State,* 149 Tenn. 98, on page 115, 257 S. W. 850, on page 855, which was referred to in the original opinion wherein the Court said:

"We are therefore of the opinion that the trial judge erred in failing to sharply make before the jury the distinction above pointed out, and in failing to tell the jury that questions asked on cross-examination were merely for the purpose of testing the accuracy and credibility of the character witnesses, and that the evidence thus developed was not substantive evidence of good or bad character."

As to this particular point in the case the opinion does not disclose whether or not there was a special request for a charge containing this distinction but further over in the opinion it appears that the Trial Judge in his charge failed to make another distinction and that is between the general character of the defendant *before* and *after* the homicide, and on page 122 of 149 Tenn., last paragraph, on page 857 of 257 S. W., it was said:

"While, as is pointed out by the state, no request was made in this behalf, we think that it was incumbent on the court under the facts of this case to clear up the confusion which must have existed in the minds of the jury by a concise statement of the applicable rule."

Inferentially, therefore, we may assume that there were

no special requests with respect to either phase of this evidence on reputation adduced on cross-examination.

It is, therefore, insisted by petitioner that it was not necessary in the instant case for counsel to have tendered a special request to the Trial Court to point out this distinction in his charge, that is, that the evidence adduced in the instant case on cross-examination was competent only for the purpose of testing the credibility of the witness but not competent as substantive evidence of the crime charged.

Examination of the entire opinion discloses that there was apparently considerable confusion in the minds of the Trial Judge and of counsel on the several questions of evidence that arose in the case, that there was much partisanship and an inflamed state of public opinion and as said on pages 122 and 123 of 149 Tenn., on page 857 of 257 S.W.:

"A large portion of the damaging evidence adduced on cross-examination related to the character of the defendants since the homicide. To charge the jury generally under the facts of this *particular case,* and in view of the court's erroneous rulings already mentioned, that 'you should consider all the evidence both for and against their general reputation,' etc., was to leave an erroneous impression on the minds of the jury." (Italics ours.)

So that as a result of all these things, this court saw fit to reverse and remand for a new trial despite Chapter 32, of the Acts of 1911, Code Section 10654.

█ We think the ruling made in the above case was made because of the particular facts above mentioned and that such ruling is not in accord with the general rule applied over the years, the latest expression of this Court

being in *Turner* v. *State,* 188 Tenn. 312, 322, 219 S.W. (2d) 188, 193, where the Court said:

"(3) No assignment of error on the Judge's charge to the jury, either for omission or inadequacy, will be considered unless a special request was tendered, pointing out the defendant's contention as to the error. Code sec. 11750; *State* v. *Becton,* 66 Tenn. 138; *Powers* v. *State,* 117 Tenn. 363, 370, 97 S.W. 815."

In State v. Becton, the Judge failed to instruct the jury that they might commute the punishment to imprisonment for life, this being a capital case, and it was held that the Judge failed to perform his duty in that regard, but that the same was not reversible error because no request to charge further was made.

In *Powers* v. *State,* supra, [117 Tenn. 363, 97 S.W. 817] the Judge charged simply:

" 'Dying declarations made by the deceased in this case have the same weight and sanctity as evidence testified to under oath.' "

He gave this instruction in answer to a general request upon the part of counsel to charge upon the subject, but no special request was made to the Court formulating the instruction desired. Held,—not reversible error.

Since there was no special request in the instant case we are of the opinion that assignment of error No. 3 is not well taken and the petition to rehear is, accordingly, overruled.