**STATE of Tennessee, Appellee,**

v.

**Charles Alexander BADGETT,
Appellant.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

Jan. 14, 1985.

Permission to Appeal Denied by
Supreme Court April 1, 1985.

Robin J. Mitchell, Asst. Atty. Gen., Nashville, Robert L. Jolley, Jr., Jimmy K. Davis, Asst. Dist. Attys. Gen., Knoxville, for appellee.

Randall E. Reagan, Knoxville, for appellant.

## OPINION

DAUGHTREY, Judge.

The defendant, Charles Alexander Badgett, was convicted of grand larceny and was sentenced to life imprisonment as a habitual criminal. On appeal, he challenges (1) the sufficiency of the evidence, (2) the admissibility of evidence of pending charges against him, (3) the propriety of the jury instructions, and (4) the validity of his life sentence. We find no reversible error in connection with these issues and sustain the defendant's conviction.

The facts surrounding the offense were largely undisputed. The state's proof showed that Badgett and a co-defendant, Gregory Gillis, entered a Knoxville Super-X Drug Store, asked a sales clerk to see some Seiko watches, grabbed four of the watches, and fled from the store. The stolen merchandise was valued at $500–600. When apprehended a short time later, Badgett had two of the missing watches on his person. He subsequently confessed his part in the theft.

At trial, the defendant told the jury that he and Gillis entered the Super-X with the intent to "shoplift some cologne" in order to raise funds to buy drugs. He said that the theft of the watches was spontaneous and insisted that he would not have committed the offense had he not been addicted to drugs. The jury nevertheless found Badgett guilty of grand larceny.

■ On appeal, the defendant contends that he should have been convicted of shoplifting rather than larceny, on the theory that shoplifting is a specific crime dealing with the theft of goods from a retail establishment, while larceny is the more general crime involving theft. He relies on *State v. Safley,* 172 Tenn. 385, 390, 112 S.W.2d 831 (1938), and a long line of similar Tennessee cases to support the proposition that a special provision will control over a more general statute.

The state argues in response that shoplifting, as defined by T.C.A. § 39–3–1125, is the willful concealment of unpurchased goods or merchandise of a store, either on or outside the premises, with the intent of converting those goods to personal use without paying the purchase price. The grand larceny statute, on the other hand, prohibits the taking and carrying away of goods over the value of $200, with the intent of depriving the owner of the goods. T.C.A. § 39–3–1103. The state argues that the element of concealing which is essential

to a shoplifting charge was missing in this case, because the defendant merely snatched the merchandise from the Super-X clerk's custody and ran. We agree and hold that under the peculiar circumstances of this case, the defendant was properly convicted under the larceny statute, even though the stolen goods were taken from a retail store. In all other respects, the evidence is factually and legally sufficient to sustain the defendant's conviction for larceny.

Additionally, the defendant argues that the evidence is insufficient to support the jury's finding that he is a habitual criminal. He bases this contention on the fact that the habitual criminal count of the indictment originally alleged that he had been indicted for an offense that occurred in March of 1975 and had been convicted of that offense in August of 1985. When the prosecuting attorney discovered this typographical error at trial, he asked to amend the indictment, noting that, in its original form, it charged an impossible date. The amendment was allowed by the trial court, over the defendant's objection. He argues that the amendment violates Rule 7(b) of the Tennessee Rules of Criminal Procedure because without the amended allegation, the habitual criminal count contains too few prior convictions to qualify under T.C.A. § 39–1–801. Thus, claims the defendant, the amended indictment improperly charges "an additional offense" than that which was charged without the amendment (that is to say, no offense at all).

■ This argument is at the same time original and disingenuous. As the state notes in its brief, a similar typographical error in dates was held to be inconsequential in *Jeffries v. State*, 640 S.W.2d 854 (Tenn.Crim.App.1979). The issue in that case was a variance between the indictment and the proof, while the issue before us now is the propriety of the amendment allowed below. Nevertheless, the principle in both cases is the same, because if the amendment had been disallowed, a variance would have existed that would have provided no grounds for relief under *Jeffries*.

*See also State v. Taylor*, 661 S.W.2d 695, 698 (Tenn.Crim.App.1983). We thus find no error in the trial court's ruling.

The defendant next contests the introduction of evidence that he had numerous charges for larceny, forgery, and shoplifting pending against him at the time of the trial in this case. Information about these charges was not brought out until the second phase of the trial, however, when the question of Badgett's status as a habitual criminal was in issue. The defendant produced several witnesses, three of whom were ministers who had worked with Badgett at the local jail. They testified that, in their opinion, Badgett's troubles could be traced to his drug addiction, that he was otherwise a person of good character and a proper candidate for rehabilitation, and that he should not be given a life sentence. Badgett's mother testified similarly, despite the fact that she herself had signed several warrants against her son for forgery and larceny.

When the defendant opened up the question of his good character and fitness for rehabilitation, the state sought to cross-examine his character witnesses about their acquaintance with the defendant's background. For this purpose, the trial court allowed the prosecuting attorney to ask two of the witnesses about their knowledge of numerous other "bad acts" committed by Badgett, all of which had resulted in criminal charges but none of which had yet come to trial.

The defendant now complains that this was reversible error, citing *State v. Sheffield*, 676 S.W.2d 542 (Tenn.1984), for the proposition that "arrests and indictments are generally inadmissible." In response, the state relies on *Crawford v. State*, 197 Tenn. 411, 273 S.W.2d 689 (1954), and *Stepheny v. State*, 570 S.W.2d 356, 359 (Tenn.Crim.App.1978). *Crawford* held that specific acts of misconduct are generally inadmissible to rebut evidence of good character, but that they may be admissible on cross-examination to test the value of a character witness's testimony concerning

good character. 273 S.W.2d at 691–2. In *Stepheny*, this court noted:

> [It] would not be in harmony with the primary function of a trial as a truth-finding expedition to allow the [defendant] to present to a jury through character witnesses an unchallenged cloak of respectability and standing in the community when in fact that was not true.

570 S.W.2d at 359.

■ In allowing cross-examination concerning Badgett's pending charges, the trial judge echoed the ruling in *Stepheny*, noting that once he has put evidence of his "good points" before the jury, "[t]he defendant has to take the bad along with the good, so to speak." Although we cannot fault this ruling legally, we do feel that when the issue before the jury is essentially recidivism, the prejudicial effect of telling the jury about numerous pending charges may reweigh the probative value they have in permitting evaluation of character evidence. And in *Sheffield, supra*, our Supreme Court pointed out that evidence of "arrests and indictments," even when permissible, as here, is by its nature "highly prejudicial" and that when asked to allow its introduction, the trial court "must balance the probative value of the proffered evidence against the prejudicial effect upon defendant." 676 S.W.2d at 553. Courts should be especially careful in this regard where, as in the instant case, the possible penalty is a life sentence.

■ It is unclear from the record whether the trial judge in this case made such a balancing determination or whether he automatically allowed the evidence as constituting "the bad along with the good." In any event, we conclude that the error, if any, was harmless. The record shows that the defendant had been previously convicted of the requisite number of qualifying offenses and thus establishes his status as a habitual criminal, without regard to the other charges pending against him.

■ The defendant next contends that the trial judge gave an erroneous supplemental instruction to the jury after the jury asked during deliberation when the defendant would become eligible for parole if convicted as a habitual criminal. The trial judge responded:

> You are not allowed by law to consider questions concerning parole eligibility or release dates. Parole rules are subject to change and should not be considered by you. You should consider a life sentence as exactly that—a life sentence. You should also consider that any sentence imposed by you will be served by the defendant.

Although the trial judge might well have chosen to limit his instruction to the first sentence, there is nothing erroneous in the remainder of the charge. It is, if anything, favorable to the defendant, because it suggests that someone serving a life sentence for recidivism is not subject to parole. We find no error in connection with the instruction.

■ Lastly, the defendant contends that his life sentence constitutes cruel and unusual punishment because it is disproportionate to the offense for which he was convicted. But the life sentence was imposed not to punish Badgett for larceny of $600 worth of watches but for being a recidivist. Unlike the defendant in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), who had been given a life sentence without possibility of parole for a series of nonviolent property crimes, Badgett's prior convictions included one for robbery and involved the threat of violence against another person. Moreover, as this court has previously noted, our recidivist statute is constitutionally distinguishable from the South Dakota statute in *Helm* because the life sentence under Tennessee statute carries the possibility of parole, while the South Dakota statute does not. The defendant's minimum 30-year sentence as a habitual criminal, although obviously substantial, does not amount to cruel and unusual punishment under the facts in this case.

We find no reversible error, and we therefore affirm the judgment of the trial court.

BYERS and SCOTT, JJ., concur.