**STATE of Tennessee,
Plaintiff–Appellant,**

v.

**Deloris N. SIMS, Defendant–Appellee.**

Supreme Court of Tennessee,
at Knoxville.

Feb. 15, 1988.

W.J. Michael Cody, Atty. Gen., Jane W. Young, Asst. Atty. Gen., Nashville, for plaintiff-appellant.

Randall E. Reagan, Knoxville, for defendant-appellee.

## OPINION

BROCK, Justice.

We granted this appeal to consider our rules regarding a matter of evidence in criminal cases.

The defendant, who was convicted of shoplifting goods not exceeding $200 in value, testified at trial. After a hearing pursuant to *State v. Morgan,* Tenn., 541 S.W.2d 385 (1976), the State was allowed to impeach the defendant by asking her questions about writing a worthless check in January 1981 and changing price stickers on merchandise in a drugstore in June 1983.[1] The defense then presented two character witnesses, Elizabeth Harrell and Bob Edwards, who testified that the defendant had a good reputation for truthfulness in the community in which she lived and that she was entitled to be believed under oath in the courtroom.

The State then cross-examined these witnesses about certain of defendant's prior arrests which did not result in convictions.[2] The pertinent portions of these examinations follows:

Q. Ms. Harrell, had you heard, in your discussions in the community that Ms. Sims had been arrested for shoplifting on February the 13th, 1982?

A. No, I hadn't.

Q. Had you heard that she was arrested for assault and battery, on February the 13th, 1982?

A. No.

Q. Are you aware or have you heard in the community, in your discussions, that she was arrested for shoplifting on June the 29th, 1983?

A. Yes.

Q. Okay. In fact, you were present at that time, weren't you?

A. No, I wasn't.

Q. Were you aware that she was arrested on January the 9th, 1981, for passing a bad check?

A. No.

Q. Okay. Does your awareness of any of these factors have any effect on your opinion concerning Ms. Sims' truthfulness?

A. No, it doesn't.

\* \* \* \* \* \*

Q. Are you aware that Ms. Sims was convicted of shoplifting on August the 12th, 1981?

MR. SIMPSON: Objection. Irrelevant.

THE COURT: All right. The objection is overruled.

MR. SIMPSON: And, besides, your Honor, it assumes a fact not in evidence and is simply not true.

THE COURT: All right. All right. Go ahead.

MR. SIMPSON: She was not convicted in 1981 of shoplifting or anything else.

A. No.

Q. Would that affect your opinion on her credibility in this case?

A. No, it wouldn't.

Q. Mr. Edwards, how many people have you talked about Ms. Sims' reputation with?

A. (Pause) Of course, I don't know for sure. I would guess, in the cases we were involved in,[3] there were a couple of attorneys involved in some guardian ad litem, in each case, in the court. I would imagine, half a dozen to a dozen.

1. The Court of Criminal Appeals held these were acts of dishonesty which could be inquired into as specific instances of conduct probative of truthfulness or untruthfulness under Federal Rule of Evidence 608, adopted in *State v. Morgan, supra.*

2. As best as can be determined from the record, the defendant's criminal record showed the following:

January 9, 1981—writing a worthless check, charge dismissed upon payment;
August 12, 1981—shoplifting, case dismissed as a first time offender and record expunged pursuant to § 40–21–109, T.C.A.;

February 13, 1982—shoplifting and assault and battery, grand jury returned a no true bill;
March 25, 1983—the shoplifting case involved in this trial; and
June 29, 1983—shoplifting, convicted on August 30, 1983, in General Sessions Court, appeal to Circuit Court pending at the time of this trial.

3. Mr. Edwards was an attorney who had dealt with the defendant on custody disputes involving some of the children attending a day care center she operated.

Q. Okay. Are you aware that Ms. Sims pled guilty to shoplifting on August the 12th of 1981?

A. I was aware—

MR. SIMPSON: Objection, your Honor. Now, I think the Court has ruled on that matter.

THE COURT: Well, gentlemen, will you approach the bench once more, please.

### [BENCH CONFERENCE]

Q. Are you aware that, on August the 12th, 1981, Ms. Sims was arrested for shoplifting?

A. I wasn't aware of the specific date or even of specific circumstances, but I was aware of the pendency of the charge.

Q. Okay. Are you, also, aware that, on February the 13th, 1982, Ms. Sims was arrested for shoplifting and assault and battery?

A. I was, again, aware of a couple. I—I don't know exactly how many. I had it in mind that there were a couple of prior instances of this kind of thing.

Q. Were you aware that in January of 1981, Ms. Sims passed a worthless check—

A. Of the—

Q. —was arrested for passing a worthless check?

A. —of the check, I had no awareness, no.

Q. Are you aware that, on June the 29th, 1983, Ms. Sims was again arrested for shoplifting?

A. Again, I knew of a couple prior shoplifting incidents, but if there's more than two, I suppose, no, I didn't.

Q. Okay. And were you aware that, on August the 30th, 1983, that she was in fact convicted of shoplifting?

A. Again, I'm not aware of the specifics of those cases.

Q. Would that affect your opinion of her reputation, Mr. Edwards?

A. Having known about those for some time—at least, the two of which I was aware—the two of which I was aware, no, they didn't. The other two, not

knowing anything about the circumstances, I couldn't say for sure if it would or not.

Q. Okay. It depends on the circumstances of those particular offenses—

A. Yes.

Q. —before it would affect your opinion?

The Court of Criminal Appeals found reversible error and reversed and remanded for a new trial because of the inquiries about the defendant's arrests and because of questions concerning the August 1981 shoplifting offense, which had been dismissed and expunged from the official records under § 40–21–109(b), T.C.A. The court stated,

> The mere fact that defendant had been arrested on these various charges did not constitute specific instances of conduct on her part which would warrant inquiry from the witness for the purpose of attacking defendant's credibility. The State does not dispute the fact that the August 12, 1981, charges were dismissed and expunged from the record in accordance with T.C.A. § 40–20–109. Under the statute there was no adjudication of guilty in that case.

Denying the State's petition to rehear on this issue, the court noted that the arrests were acts of the State and, in the absence of a conviction, inadmissible as part of the defendant's general reputation, as was true of the actions of the defendant in *Crawford v. State*, 197 Tenn. 411, 273 S.W.2d 689 (1954), which was cited by the State in support of its position. We granted review to consider these issues.

The State challenges the holding of the Court of Criminal Appeals by asserting that the questions about defendant's arrests were not asked to impeach the defendant but to impeach defendant's character witnesses. The cross-examination, the State argues, was designed to test "the foundation of [the witnesses'] opinion as to the defendant's reputation for truthfulness."

This distinction was pointed out in *Tucker v. State*, 149 Tenn. 98, 257 S.W. 850, 855 (1924):

194

There is ... a sharp distinction between evidence of the general reputation of a defendant, and evidence of specific acts and conduct which may be developed on cross-examination. The one class of evidence may shed light on the guilt or innocence, the credibility or lack of credibility, of the accused. The other class of evidence must be limited to testing the value of the opinion of the character witness.

■ *Tucker* and subsequent cases [4] have made it clear that in Tennessee a character witness may be cross-examined as to what he has heard in the community about the character of the defendant to show that his conclusion as to the defendant's reputation is unsupported or to test the accuracy and candor of the witness himself. *See* Paine, *Tennessee Law of Evidence* § 21 (1974). A trial judge, however, must instruct the jury that such questions when asked on cross-examination are merely for the purpose of testing the accuracy and credibility of the witness and that the evidence thus developed is not substantive evidence of the defendant's good or bad character. *Tucker, supra,* 257 S.W. at 855; *see also State v. Chestnut,* 643 S.W.2d 343, 348 (Tenn. Crim.App.1982) (failure to give this instruction was error).

None of these cases, however, has fully discussed the issue of whether cross-examination of the character witness for these purposes may touch upon *arrests* of the defendant which did not result in convictions. In *Tucker, supra,* the defendants' character witnesses as to the defendants' reputation for truth and veracity and peace and quiet were cross-examined about the defendants' activities as bootleggers and about one defendant's assault on his own brother. The opinion quoted from *Corpus Juris* and *Moulton v. State,* 88 Ala. 116, 6 So. 758 (1889), to the effect that a character witness may be cross-examined as to "particular charges" against the defendant or "rumors and reports" he has heard concerning the defendant and his conduct. Such questions were permitted to test the

witness's "information, accuracy and credibility."

Many years later, in *Taylor v. State,* 212 Tenn. 187, 369 S.W.2d 385 (1963), this Court approved cross-examination of a character witness as to the defendant's arrest for gambling and his fight with the arresting officers. The Court stated,

Here a witness, a character witness, testified as to the good character of his brother and then after he had done so it was entirely proper to question him about certain charges or rumors of misconduct that he had heard, facts known to him, etc., for the purpose of testing the value of the witness's evidence in chief. *Crawford v. State,* 197 Tenn. 411, 417, 273 S.W.2d 689 [1954].

369 S.W.2d at 386.

*Crawford,* cited in this quote, is the case relied upon by the State in the present case. *Crawford,* however, did not involve allegations as to arrests. There the court approved cross-examination of defendant's character witnesses on whether it was part of the defendant's general reputation that he "cut a man," where the question was asked to test the value of the witnesses' evidence. The court stated that "when a witness gives a party a good character, he may be cross-examined as to particular acts or *charges* or *rumors* of misconduct he has heard." (Emphasis supplied.) 273 S.W.2d at 692.

In *Hill v. State,* 3 Tenn.Crim.App. 331, 461 S.W.2d 50, 52–53 (1970), the court, citing *Crawford* and *Taylor, supra,* approved cross-examination of a character witness on his knowledge of other "charges" against the defendant. The *Crawford* case was also relied upon to sustain questions about "charges" as to various offenses in juvenile court on the cross-examination of a character witness in *Stepheny v. State,* 570 S.W. 2d 356, 359 (Tenn.Crim.App.1978).

Recently, in *State v. Badgett,* 693 S.W.2d 917 (Tenn.Crim.App.1985), the Court of Criminal Appeals discussed the propriety of

---

4. *See, e.g., McGowen v. State,* 221 Tenn. 442, 427 S.W.2d 555, 559 (1968); *Walker v. State,* 197 Tenn. 452, 273 S.W.2d 707, 711 (1954); *Correll v. State,* 4 Tenn.Crim.App. 676, 475 S.W.2d 209, 210 (1971); *Garner v. State,* 4 Tenn.Crim.App. 189, 469 S.W.2d 542, 544 (1971).

cross-examining a character witness about pending charges for larceny, forgery, and shoplifting during the habitual criminal phase of a trial. The court stated:

When the defendant opened up the question of his good character and fitness for rehabilitation, the state sought to cross-examine his character witnesses about their acquaintance with the defendant's background. For this purpose, the trial court allowed the prosecuting attorney to ask two of the witnesses about their knowledge of numerous other "bad acts" committed by Badgett, all of which had resulted in criminal charges but none of which had yet come to trial.

The defendant now complains that this was reversible error, citing *State v. Sheffield*, 676 S.W.2d 542 (Tenn.1984), for the proposition that "arrests and indictments are generally inadmissible." In response, the state relied on *Crawford v. State*, 197 Tenn. 411, 273 S.W.2d 689 (1954), and *Stepheny v. State*, 570 S.W. 2d 356, 359 (Tenn.Crim.App.1978). *Crawford* held that specific acts of misconduct are generally inadmissible to rebut evidence of good character, but that they may be admissible on cross-examination to test the value of a character witness's testimony concerning good character. 273 S.W.2d at 691–2. In *Stepheny*, this court noted:

[It] would not be in harmony with the primary function of a trial as a truth-finding expedition to allow the [defendant] to present to a jury through character witnesses an unchallenged cloak of respectability and standing in the community when in fact that was not true.

570 S.W.2d at 359.

In allowing cross-examination concerning Badgett's pending charges, the trial judge echoed the ruling in *Stepheny*, noting that once he has put evidence of his "good points" before the jury, "[t]he defendant has to take the bad along with the good, so to speak." Although we cannot fault this ruling legally, we do feel that when the issue before the jury is essentially recidivism, the prejudicial effect of telling the jury about numerous pending charges may reweigh the probative value they have in permitting evaluation of character evidence. And in *Sheffield, supra,* our Supreme Court pointed out that evidence of "arrests and indictments," *even when permissible, as here,* is by its nature "highly prejudicial" and that when asked to allow its introduction, the trial court "must balance the probative value of the proffered evidence against the prejudicial effect upon defendant." 676 S.W.2d at 553. Courts should be especially careful in this regard where, as in the instant case, the possible penalty is a life sentence. (Emphasis supplied.)

693 S.W.2d at 919–920.

The *Badgett* opinion continued by pointing out that it was unclear whether the trial judge in that case had made a determination by balancing the probative value of such cross-examination against its prejudicial aspects or whether the judge had automatically allowed the questions. *See McGowan v. State, supra.* Any error, however, was harmless, the court concluded, since the record showed an adequate number of convictions to establish that the defendant was an habitual criminal without reference to the pending charge. *Badgett* seems, therefore, to support the State's position that cross-examination concerning prior arrests is permissible for the limited purpose of testing the witness's credibility.

*State v. Sheffield, supra,* mentioned by the court in *Badgett,* is analogous to the present case. *Sheffield* involved the cross-examination of an expert witness, not a character witness, at the sentencing phase of a capital murder trial. There the Court held that the State had improperly cross-examined a sociologist testifying on behalf of the defendant. The State had asked the witness if he was aware of the defendant's previous arrests in forming his opinion that the death penalty was inappropriate in that case. The cross-examination also went into the details of the offenses. While this Court reaffirmed that it was permissible to allow reasonable latitude to test the basis of an expert opinion, it also stated that the trial court must weigh the competing

factors of probative value and prejudicial effect. Error occurred because the arrests were irrelevant to the facts forming the basis of the expert's opinions and because the questions went far beyond the "absolute maximum of information" the State could use to test the sociologist's opinion.

■ From these cases, it appears that our rule permits cross-examination of defendant's character witnesses concerning defendant's prior arrests to test the character witnesses' knowledge and credibility where the trial judge determines that the probative value of such examination outweighs its prejudicial effect and where the examination is accompanied by an instruction to the jury that the questions are asked to test the witnesses' accuracy and credibility and that the evidence developed is not substantive evidence of the defendant's good or bad character.

Regardless of the case law, however, the Court of Criminal Appeals in this case seems to be analyzing the problem under Rule 608 of the Federal Rules of Evidence as adopted in *State v. Morgan, supra.* The character witnesses here may indeed have been called under the auspices of that rule to rehabilitate the defendant after she was impeached by the State during her own testimony. Nevertheless, it does not appear that Rule 608 addresses the question of whether a character witness may himself be impeached by questions about the prior arrests or charges of another witness concerning whose character for truthfulness he has testified.

Weinstein, in his treatise on the federal rules, says that the rule itself does not deal with this problem, although prior standard practice in the federal courts would have permitted such inquiries of a character witness. 3 *Weinstein's Evidence,* ¶ 608[05], pp. 608–40—608–41 (1987).

The majority rule on this issue is that expressed in *Tucker v. State, supra,* and most courts have interpreted it to allow cross-examination about arrests, even when they did not result in convictions. *See generally, McCormick on Evidence* § 191, p. 569 (3d ed. 1984); 2 *Weinstein's Evidence* ¶ 405[02] (1986); 3A *Wigmore on Evidence*

§ 988 (Chadbourn rev. 1970); Annot., 13 A.L.R.4th 796 (1982); 81 Am.Jur.2d *Witnesses* §§ 501–502 (1976); 98 C.J.S. *Witnesses* § 387(b)(2) (1957).

Among the cases allowing questions about defendant's arrests when testing a character witness's testimony are: *United States v. Collins,* 779 F.2d 1520 (11th Cir. 1986) (arrests and convictions); *United States v. Jordan,* 722 F.2d 353, 358 (7th Cir.1983); *Neely v. State,* 469 So.2d 702, 704 (Ala.Crim.App.1985); *De Jarnette v. State,* 338 A.2d 117 (Del.1975); *Marcus v. United States,* 476 A.2d 1134 (D.C.App. 1984); *Butler v. State,* 376 So.2d 937, 939–940 (Fla.App.1979); *Bryant v. State,* 236 Ga. 495, 224 S.E.2d 369 (1976); *Montgomery v. State,* 173 Ga.App. 570, 327 S.E.2d 770 (1985); *Randolph v. State,* 269 Ind. 31, 378 N.E.2d 828, 832–833 (1978); *State v. Johnson,* 389 So.2d 372 (La.1980); *State v. Bagley,* 378 So.2d 1356, 1358 (La.1979); *State v. Byrd,* 676 S.W.2d 494, 505 (Mo. 1984); *State v. Hendrix,* 699 S.W.2d 779, 782 (Mo.App.1985); *State v. Newte,* 188 Neb. 412, 197 N.W.2d 403 (1972); *State v. Polhamus,* 62 Ohio Law Abs. 113, 106 N.E. 2d 646, 648–649 (1951); *Custer v. State,* 561 P.2d 75, 79 (Okla.Crim.App.1977); *State v. Lyles,* 210 S.C. 87, 41 S.E.2d 625, 626–627 (1947); *Rochester v. State,* 659 S.W.2d 834 (Tex.Crim.App.1983).

The leading case is *Michelson v. United States,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948), where, over a strong dissent by two members of the Court, the United States Supreme Court held that a character witness may be cross-examined as to an arrest of the person whose character he has testified about whether or not the arrest culminated in a conviction. Said the Court:

Arrest without more may nevertheless impair or cloud one's reputation. False arrest may do that. Even to be acquitted may damage one's good name if the community receives the verdict with a wink and chooses to remember defendant as one who ought to have been convicted. A conviction, on the other hand, may be accepted as a misfortune or an injustice, and even enhance the standing of one

who mends his ways and lives it down. Reputation is the net balance of so many debits and credits that the law does not attach the finality to a conviction when the issue is reputation, that is given to it when the issue is the credibility of the convict.

The inquiry as to an arrest is permissible also because the prosecution has a right to test the qualifications of the witness to bespeak the community opinion. If one never heard the speculations and rumors in which even one's friends indulge upon his arrest, the jury may doubt whether he is capable of giving any very reliable conclusions as to his reputation.

*Id.,* 69 S.Ct. at 222.

The Court pointed out that this entire line of inquiry would have been foreclosed "unless defendant thought the net advantage from opening it up would be with him"; therefore, "defendants ... have no valid complaint at the latitude which existing law allows to the prosecution to meet by cross-examination an issue voluntarily tendered by the defense." *Id.* at 223.

*Michelson* emphasized that the matter involved an exercise of discretion by trial courts, which have a "heavy responsibility" to prevent misuse of this type of cross-examination. The Court approved the procedure followed by the trial judge, who had ascertained out of the presence of the jury "that the target of the question was an actual event, which would probably result in some comment among acquaintances if not injury to defendant's reputation" and "satisfied himself that counsel was not merely taking a random shot at a reputation imprudently exposed or asking a groundless question to waft an unwarranted innuendo into the jury box." *Id.* at 221.

Other decisions permitting questions about arrests have mandated safeguards similar to those approved in *Michelson.* Some federal courts require that the court ascertain that the prosecutor has a good faith factual basis for the incidents inquired about and that the arrest, conviction or misconduct is relevant to the character trait raised at trial. *See United States v. Bynum,* 566 F.2d 914, 919 (5th Cir.1978); *United States v. Lewis,* 482 F.2d 632, 639

(D.C.Cir.1973). Other states require a similar procedure. *See, e.g., People v. Dorrikas,* 354 Mich. 303, 92 N.W.2d 305 (1958) (the judge must conduct a jury out hearing as to whether the acts were actually committed, their time and place).

Those courts permitting cross-examination of this type generally require that the arrest or conduct involve an offense relevant to the character trait to which the witness testified. *See, e.g., Hohman v. State,* 669 P.2d 1316, 1326–1327 (Alaska App.1983); *Butler v. State,* 376 So.2d 937 (Fla.App.1979); *People v. Robinson,* 70 Mich.App. 606, 247 N.W.2d 308, 309 (1976); *State v. Krout,* 6 Ohio App.3d 5, 451 N.E.2d 515, 518–519 (1982); *Rochester v. State,* 659 S.W.2d 834 (Tex.Crim.App.1983). An instruction such as that required by *Tucker v. State, supra,* is also generally necessary. *See, e.g., De Jarnette v. State, supra,* 338 A.2d at 119; *State v. Johnson, supra,* 389 So.2d at 376.

The good faith of the prosecution as an element in deciding whether to permit such questions is also often emphasized. *See, e.g., United States v. Nixon,* 777 F.2d 958, 970 (5th Cir.1985). In *Whatley v. State,* 131 Ga.App. 320, 205 S.E.2d 517 (1974), the court reminded prosecutors of Disciplinary Rule 7–106(c)(1), that a lawyer shall not "[s]tate or allude to any matter ... that will not be supported by admissible evidence." *See also* EC 7–25: "[A] lawyer should not by subterfuge put before a jury matters which it cannot properly consider." The Missouri courts reminded attorneys that these questions may not be asked for the purpose of improperly showing other crimes or going into collateral details and they must not be argumentative or call for a conclusion or assume facts. *State v. Hendrix, supra,* 699 S.W.2d at 782.

The obvious potential for prejudice has made the majority rule less than popular. It has been soundly criticized by the treatises and cases, even those following the rule.

Two recent cases have specifically abandoned the rule in the situation involved here, where cross-examination has been allowed concerning arrests which did not result in convictions. *See State v. Kramp,*

200 Mont. 383, 651 P.2d 614, 618 (1982), and *Commonwealth v. Scott*, 496 Pa. 188, 436 A.2d 607 (1981); *cf. also People v. Roberts*, 133 Ill.App.3d 731, 88 Ill.Dec. 773, 479 N.E.2d 386, 390–391 (1985); *Facyson v. State*, 35 Md.App. 202, 370 A.2d 158 (1977). *Commonwealth v. Scott, supra*, is the more instructive of these cases. In it the court, refusing to follow *Michelson*, found that the prejudicial effect of such cross-examination far outweighs any other value such questioning may have because "an arrest is equally consistent with either guilt or innocence." 436 A.2d at 612. At least one statutory rule of evidence prohibits such cross-examination. *See State v. LaPorte*, 62 N.J. 312, 301 A.2d 146 (1973) (discussing Rule 47, New Jersey Rules of Evidence).

Still the majority of courts appear to allow such questions. The Nebraska Supreme Court has said that a rigid rule absolutely forbidding cross-examination as to arrests grants a defendant in a criminal case a right which is impermissible under all other evidentiary standards for which there is no logical rationale. *State v. Newte*, 197 N.W.2d at 407. The Louisiana Supreme Court concluded that "neither law nor justice permits a defendant to foist a spurious reputation upon a jury because the State is so limited in its cross-examination of the character witnesses that it may not inquire about knowledge of prior arrests." *State v. Bagley, supra*, 378 So.2d at 1358. The rule, wrote the majority in *Michelson*, subjects a defendant's proof "to tests of credibility designed to prevent him from profiting by a mere parade of partisans." 69 S.Ct. at 220.

The State asserts that the cross-examination of the defendant's character witnesses as to her prior arrests, which did not result in convictions, was proper. The general rule in the majority of jurisdictions supports this type of questioning for this specific purpose. Our case law would appear to permit such questions after proper scrutiny, limitation, and instruction by the trial court. *See State v. Badgett, supra*. The potential for prejudice in allowing such cross-examination, however, is great; and the rule seems to be regarded as necessary evil by many of the courts that follow it.

Such examination must be accompanied by an appropriate limiting instruction to the jury. The arrest should also involve an act or crime relevant to the character trait at issue.

■ Applying the law to this specific case, we see several problems. First of all, the trial court gave no limiting instruction to the jury as *Tucker* required. However, the defendant never requested any instructions. *See Taylor v. State, supra*, 369 S.W.2d at 386 (failure to so instruct jury is not a reversible or fundamental error). Second, the record does not show that the trial court engaged in the balancing procedure suggested by *Badgett* and *Sheffield, supra*. Third, the defendant did not make appropriate objections to these questions.

Since the arrest should be for an offense relevant to the character trait at issue, here defendant's truthfulness, we note that the assault and battery arrest is irrelevant to this trait. Passing a bad check is relevant, however, as is shoplifting, which, as a form of stealing, reflects on one's truthfulness, *cf. State v. Norris*, 684 S.W.2d 650, 654 (Tenn.Crim.App.1984), although some courts feel otherwise. *See, e.g., United States v. Entrekin*, 624 F.2d 597, 598–599 (5th Cir.1980); 3 *Weinstein's Evidence*, ¶ 609[04], pp. 609–79—609–84 (1987) (discussing relevance to truthfulness in the context of Rule 609).

Although not directly related to the issue of whether an arrest is a proper matter for cross-examination of a character witness, we point out that another potential problem in this case involves the form or the questions, most of which were framed, "Are you aware?" rather than "Have you heard?", the latter being the form required by a majority of the courts. *Compare People v. Fields, supra*, 287 N.W.2d at 328, *with State v. Styles*, 93 Wash.2d 173, 606 P.2d 1233 (1980). "Have you heard?" is preferred because the examination is in part a test of the witness's acquaintance with the defendant's reputation, i.e., what the witness has heard about the defendant, not the fact of the arrest. *See* Paine, *supra*, § 21. *But see McGowen v. State, supra*, (permitting "Are you aware?" questions). However, the defendant made no objection to the form of the questions.

One last problem in this case involves the question about the defendant's arrest for shoplifting which had been expunged under § 40–21–109(b), T.C.A. We hold that questions as to this particular arrest should be forbidden under the public policy of the statute, which provides that the effect of dismissal of the case and expungement of the record is to restore of the person to the status he occupied before the arrest.

For the reasons set out herein, the judgment of the Court of Criminal Appeals reversing the trial court is affirmed. On retrial, the principles and rules approved in this opinion shall be followed. Costs incurred upon this appeal are taxed against the State.

HARBISON, C.J., FONES and DROWOTA, JJ., and FRANKS, Special Justice.