# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JULY SESSION, 1997

**FILED**

**September 10, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 02C01-9607-CR-00245** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **SHELBY COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. BERNIE WEINMAN** |
| **LESLIE THOMPSON,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Assault) |

## ON APPEAL FROM THE JUDGMENT OF THE CRIMINAL COURT OF SHELBY COUNTY

FOR THE APPELLANT:

BILL ANDERSON, JR.
138 North Third Street
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

JANIS L. TURNER
Assistant Attorney General
425 5th Avenue North
Nashville, TN 37243

JOHN W. PIEROTTI
District Attorney General

P.T. HOOVER
Assistant District Attorney General
Criminal Justice Complex, Suite 301
201 Poplar Street
Memphis, TN 38103

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

The Defendant, Leslie Thompson, appeals as of right pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. He was convicted by a Shelby County jury of two counts of assault.[1] The trial court sentenced him as a Range I standard offender to six months imprisonment in the county workhouse for each count, with the sentences to run concurrently. The trial court also imposed a two hundred fifty dollar ($250) fine for each count. In this appeal, the Defendant argues that the trial court erred both in permitting the State to question his character witness about knowledge of his prior bad acts and in sentencing him to six months incarceration. After reviewing the record, we conclude that the Defendant's issues lack merit. Accordingly, we affirm the judgment of the trial court.

We begin with a summary of the pertinent facts. Over Labor Day weekend in 1994, the Defendant accompanied two minor boys, J.A. and S.B.,[2] from Henderson, Texas to Memphis, Tennessee. The victims were students at Henderson High School at the time, and the Defendant was employed as a choir teacher at their school. The victims met the Defendant through the choir. The Defendant suggested that they go to Memphis for the experience of seeing another choir sing in front of an audience. According to the testimony of J.A.'s mother, the Defendant stated that the trip was being funded by the school.

---

[1] Tenn. Code Ann. § 39-13-101(a)(3).

[2] It is the policy of this Court not to refer to minor victims by name. We will refer to the victims in this case as "J.A." and "S.B.," or simply as "the victims."

The Defendant and the victims left Texas late on Friday night, drove through the night, and arrived in Memphis on Saturday morning. They stayed at the Defendant's sister's home in Memphis. On Saturday afternoon, they went to a church to hear the Defendant sing, but the victims did not practice or sing with the choir. The Defendant and the victims went out on Saturday evening to see Memphis. While they were touring Memphis, the Defendant bought beer and cigarettes for the victims. At the conclusion of the evening, they came back to the Defendant's sister's home and went to bed. The victims shared a bedroom with its own bathroom, and the Defendant slept in a separate bedroom.

They awoke on Sunday and went to church to hear the Defendant sing. After church, they toured more of Memphis and later attended a social function where the Defendant sang again. They went to a movie after the social function. After the movie, the Defendant bought the victims wine coolers and they drove around Memphis. The Defendant began to bring up matters of a sexual nature as they were conversing. He bought the victims more wine coolers, and they ate late that night shortly before returning to the Defendant's sister's home.

Once home, the Defendant joined the victims in their bedroom. All three of them were dressed for bed. The Defendant sat down on the bed next to S.B. and told him that he loved him and that "if there is anything that you ever need just tell me." The Defendant began to rub S.B.'s chest and thigh. As he was rubbing S.B.'s thigh, the Defendant began to rub "around the crotch area." At that point, S.B. feigned that he was drunk and turned over. The Defendant then moved to J.A.'s side of the bed. He rubbed the inside of J.A.'s thigh and his penis. J.A. acted like he was asleep.

The Defendant then got up from the bed and went into the bathroom attached to the victims' bedroom. The victims heard noises which indicated to them that the Defendant was masturbating. Five to ten minutes later the Defendant exited the bathroom and left the victims' bedroom. S.B. and J.A. were alarmed and agreed that they needed to get out of the house immediately. They did not want to risk leaving the bedroom to escape the house, however, so they ripped the screen of a window in their bedroom. They left the house wearing only their bedclothes and shoes.

Upon leaving the house, the victims ran to a nearby gas station. The police were called and arrived there a short time later. The victims explained what had happened to the police officers. As they were doing so, the Defendant drove by in his truck and the victims pointed him out to the police. Russell Duvall, an officer with the Shelby County Sheriff's Department, pursued and stopped the Defendant. According to Duvall, when he stopped the truck, the Defendant asked him if he had seen two young men because two individuals staying with him that weekend had just run away. Police officers then went to the Defendant's sister's home to investigate the matter and discovered that one of the window screens had been ripped apart. There were no signs of a struggle in the home.

On May 4, 1995, the Defendant was indicted on two counts of sexual battery in violation of Tennessee Code Annotated section 39-13-505(a). He was tried from October 2 to October 3, 1995. At the conclusion of the proof, the trial court granted the Defendant's motion for judgment of acquittal with respect to the indicted offenses of sexual battery. The trial court found that there had been insufficient proof of force or coercion to support charging the jury on sexual

battery. See Tenn. Code Ann. § 39-13-505(a), -503(a)(1).[3]  As a result, the trial court charged the jury only on the lesser included offense of assault. See Tenn. Code Ann. § 39-13-101(a)(3). After considering the proof presented at trial, the jury found the Defendant guilty of two counts of assault.

In his first issue on appeal, the Defendant argues that the trial court erred in permitting the State to question his character witness about knowledge of his prior bad acts. The record reflects that the Defendant offered the testimony of Terrence Tresner as part of his proof at trial. Tresner had been a student at Henderson High School and had known the Defendant for approximately two years. He had worked with the Defendant as a member of the Henderson Historical Society as well. Tresner's testimony at the Defendant's trial was admittedly offered as proof of the Defendant's good character. On direct examination, Tresner testified concerning the Defendant's reputation in the community as follows:

> Q.    Are you aware of Mr. Thompson's reputation in the community?
> A.    Yes.
> Q.    Is that reputation good or bad?
> A.    Relatively good.
> Q.    Okay. Have you, are you aware of any information in the community that would lead you to believe that Mr. Thompson was someone that it would not be safe for you to stay in his home?
> . . .
> A.    If I hadn't known him previously and got to know him as a person and not from rumors, yes. And, there were things that floated around that were not facts but just rumors, that I would get the wrong idea about him.

The direct examination of Tresner concluded after two more questions.

---

[3] Because the victims were seventeen years old at the time of the offenses, the trial court concluded that the use of parental, custodial or official authority did not qualify as coercion. See Tenn. Code Ann. § 39-13-501(1).

The prosecutor began cross-examination by asking Tresner what rumors he was referring to on direct examination. Tresner stated that there were rumors that the Defendant "likes to molest boys." The prosecutor followed this questioning by asking Tresner if he knew of a newspaper article that detailed these rumors. Tresner responded affirmatively. The prosecutor asked Tresner if he was aware that the newspaper article stated that the Defendant had been convicted of child molestation in California. Tresner responded that, to the best of his recollection, the article stated that the Defendant had been arrested but not convicted. The prosecutor then asked Tresner if it would surprise him to know that the newspaper article contained information about a conviction in California or if that information would change his opinion of the Defendant's good character. Tresner responded that the information would not change his opinion.

At trial, the Defendant objected when the prosecutor began to question Tresner about a source of the rumors referred to on direct examination, namely the newspaper article. The trial court conducted a bench conference to discuss the matter out of the hearing of the jury. After hearing argument from the prosecutor and defense counsel, the trial court found that the Defendant had offered Tresner's testimony as proof of his good character. See Tenn. R. Evid. 404(a)(1); 405(a). Accordingly, the trial court ruled that the prosecutor could question Tresner about relevant specific instances of conduct to test the extent of his knowledge of the Defendant's character. See Tenn. R. Evid. 405(a). On appeal, the Defendant contends that the trial court erred in permitting the prosecutor's questions to Tresner concerning the Defendant's character.

We begin our analysis by noting the well-established principle that character evidence is generally inadmissible to show conformity with a certain trait on a particular occasion. See Tenn. R. Evid. 404(a); Laird v. State, 565 S.W.2d 38, 40 (Tenn. Crim. App. 1978). Yet the defendant may affirmatively choose to place his or her character at issue. Tenn. R. Evid. 404(a)(1); State v. West, 844 S.W.2d 144, 149 (Tenn. 1992). Once the defendant has done so, the State may confront such evidence in multiple ways. The State has the option of presenting its own character evidence to rebut the defendant's evidence. Tenn. R. Evid. 404(a)(1); West, 844 S.W.2d at 149 (citing Durham v. State, 128 Tenn. 636, 640, 163 S.W. 447, 448 (1913)).

In addition, the State may also opt to attack the credibility of a character witness testifying on behalf of the defendant by cross-examination regarding relevant specific instances of conduct. Tenn. R. Evid. 405(a). Rule 405(a) provides that, in the event of such cross-examination, the trial court must upon request hold a hearing outside the presence of the jury to determine that a reasonable factual basis exists for the inquiry and that the probative value of the specific instance of conduct on the credibility of the character witness outweighs its prejudicial effect on substantive issues. Tenn. R. Evid. 405(a)(1) - (3). With regard to this type of attack, the Advisory Commission Comments to Rule 405 state the following:

> The examining lawyer can ask the witness about rumored arrests and charges concerning the defendant, because the witness's knowledge of the rumors might impeach the witness in the eyes of the jurors. If the witness admits having heard unfavorable rumors, the jury may decide that the witness's reputation or opinion testimony is entitled to little weight. If the witness has not heard the rumors, the witness's testimony may likewise be taken with a grain of salt because the witness is unfamiliar with the accused or the accused's community.

Advisory Commission Comments to Tenn. R. Evid. 405. In the event of such questioning, the trial judge should instruct the jury that the questions are for the purpose of testing the credibility of the witness and that the responses of the witness are not substantive evidence of the defendant's character. See State v. Sims, 746 S.W.2d 191, 194 (Tenn. 1988); State v. Chestnut, 643 S.W.2d 343, 348 (Tenn. Crim. App. 1982).

In the case at bar, the Defendant affirmatively chose to put his character at issue through Tresner's testimony on direct examination. Tresner himself alluded to unsavory rumors about the Defendant during direct examination. The prosecutor then cross-examined Tresner concerning his testimony on direct examination, including his mentioning of rumors about the Defendant's arrest on or conviction for child molestation charges. Given the prosecutor's questions to Tresner, the trial court instructed the jury as follows:

> The Court charges you that when a defendant presents a character witness to testify on his behalf, such character witness may be cross-examined about certain alleged charges or rumors of misconduct by the defendant. Such cross-examination of a character witness as to his knowledge of any alleged charges or rumors of misconduct by a defendant is not to be considered as substantive evidence of said acts, but should be considered by you only for the purpose of testing the credibility of the character witness. There is no proof of any kind in this record that such alleged charges or rumors of misconduct are factual and true, and reference to such acts was made to test the good faith, information and accuracy of the character witness. In other words, such testimony is to be considered by you only for the purpose of determining what weight, what value you will give to the character witness's testimony.

The trial court also gave the jury the pattern instruction concerning evidence of good character offered on behalf of the defendant. See T.P.I. -- Crim. 42.08.

Of course, rulings on the admissibility of evidence and the propriety and form of cross-examination are entrusted to the sound discretion of the trial court. See, e.g., State v. Hutchison, 898 S.W.2d 161, 172 (Tenn. 1994), cert. denied, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); State v. Harris, 839 S.W.2d 54, 72 (Tenn. 1992), cert. denied, 507 U.S. 954, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Such rulings will not be reversed on appeal absent an abuse of that discretion. See State v. Caughron, 855 S.W.2d 526, 541 (Tenn. 1993), cert. denied, 510 U.S. 579, 114 S.Ct. 475, 126 L.Ed.2d 426 (1993). From our review of the record, we believe that questioning the Defendant's character witness concerning rumors of the Defendant's arrests or convictions stemming from a newspaper article was permissible under Rule 405(a) of the Tennessee Rules of Evidence. Accordingly, we cannot conclude that the trial judge erred or abused his discretion in allowing the challenged questions. This issue is without merit.

In his second issue on appeal, the Defendant argues that the trial court erred in sentencing him to six months incarceration. The record indicates that the Defendant was convicted of two counts of assault pursuant to Tennessee Code Annotated section 39-13-101(a)(3). This offense is a Class B misdemeanor. Tenn. Code Ann. § 39-13-101(b). The authorized term of imprisonment for a Class B misdemeanor is a period of time not greater than six months. Tenn. Code Ann. § 40-35-111(d)(2). The trial court sentenced the Defendant to the maximum allowable term of imprisonment for each count, with the sentences to run concurrently. On appeal, the Defendant contends that his sentence is

excessive and that the trial court should have granted him an alternative sentence such as probation or judicial diversion.[4]

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a <u>de novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; <u>see</u> <u>State v. Smith</u>, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then

_____

[4] The sentencing alternative commonly known as "judicial diversion" is set forth at Tennessee Code Annotated section 40-35-313.

we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the Defendant with a reasonable opportunity to be heard as to the length and manner of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumption of a minimum sentence. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994 ).

The principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3) - (4).

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his background and social history, his present condition, including his physical and mental condition, the deterrent effect on other criminal activity, and the likelihood

that probation is in the best interests of both the public and the defendant. <u>Stiller v. State</u>, 516 S.W.2d 617, 620 (Tenn. 1974).  The burden is on the Defendant to show that the sentence he received is improper and that he is entitled to probation.  <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

The presentence report indicates that the Defendant was approximately sixty-eight years old at the time of sentencing.  He is a widower and has two adopted children, ages forty-six and forty-eight, who reside in Dallas, Texas.  He also has two sisters, ages eighty-seven and eighty-four, who reside in Memphis, Tennessee and Silver Springs, Florida respectively.  The Defendant is well-educated, including a graduate degree in the field of music, and has a good employment history.  He reported no history of alcohol or drug abuse.  The presentence report also contained letters of support from the Defendant's current employers.

The trial court conducted a sentencing hearing at which the Defendant testified.  The Defendant stated that as a result of his arrest in this case, he lost his jobs at Henderson High School and at the First Presbyterian Church where he was an organist.  He also lost his home and moved from Henderson, Texas to Tyler, Texas where he works part-time as an organist for the Emerald Bay Community Church and part-time for Exchange Data Corporation.  The Defendant testified that he has coronary-artery disease, for which he has undergone multiple surgical procedures and continues to take medication daily.  He stated that he is willing to comply with whatever restrictions are placed upon him as a condition of probation.

After considering all of the evidence and evaluating the Defendant's testimony, the trial court specifically noted that the offense "rises to a high level of seriousness." The trial court also noted that the Defendant's offenses would have a lasting impact on the young victims.[5] Given the seriousness of the offenses and the impact which the Defendant's behavior had on the victims, the trial court found that the appropriate punishment was a six-month term of incarceration.

The trial court is in a much better position to evaluate both the effect of the offenses upon the victims, as evidenced during the trial testimony, and the testimony of the Defendant at the sentencing hearing than an appellate court, which must rely on the written record. Trial judges are traditionally vested with broad discretionary powers in sentencing matters. This Court should not place trial judges in a judicial straight-jacket on sentencing matters, and we should be reluctant to interfere with their traditional discretionary powers. Moten v. State, 559 S.W.2d 770, 773 (Tenn. 1977). From this record, we cannot conclude that the trial judge erred or abused his discretion in sentencing the Defendant to a term of confinement rather than an alternative sentence.

The Defendant has failed to carry his burden of demonstrating that the sentence he received is improper and that he is entitled to an alternative sentence. Thus, this issue is without merit. For the reasons set forth in the discussion above, we conclude that the Defendant's issues on appeal lack merit. We therefore affirm the judgment of the trial court.

---

[5] In fact, the transcript of the trial testimony indicates that, upon his return from Memphis, J.A. became withdrawn and began to have familial troubles. J.A. eventually moved out of his family's home, apparently because of embarrassment over the incident in Memphis.

-13-

_____
DAVID H. WELLES, JUDGE


CONCUR:


_____
JOE B. JONES, PRESIDING JUDGE


_____
JOE G. RILEY, JUDGE